William KNIPP, Deceased.  Greer Knipp and Manning Knipp, Dependents, Appellants,

v.

NORDYNE, INC., Respondent.

No. WD 54468.

Missouri Court of Appeals, Western District.

April 28, 1998.

H. Ralph Gaw, Tipton, for appellant.

R. Kent Schultz, Holtcamp, Liese, Beckemeier & Childress, P.C., St. Louis, for respondent.

Before LAURA DENVIR STITH, P.J., and HANNA and RIEDERER, JJ.

LAURA DENVIR STITH, Presiding Judge.

Greer Knipp appeals the decision of the Labor and Industrial Relations Commission denying death benefits for the death of her husband, William Knipp. The Commission found that Mrs. Knipp had not met her burden of proof because she did not present expert evidence that the medical cause of her husband's death was an injury caused by an accident which arose out of and in the course of his employment. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

William Knipp was employed as a forklift driver by Nordyne, Inc. in Boonville, Missouri. On April 28, 1994, Mr. Knipp was using a forklift to move and stack coils, and Wesley Sapp, one of Mr. Knipp's co-workers, then hung these coils on the assembly line. While Mr. Sapp's back was turned, he heard someone say that Mr. Knipp had fallen. When Mr. Sapp turned around, he saw that Mr. Knipp had partially fallen off of the forklift seat, which was approximately three feet off the ground. Mr. Knipp's feet and legs were caught on the forklift platform, and the forklift was dragging his head and shoulders along the concrete floor.

Mr. Knipp was unconscious. Paramedics arrived and took him by ambulance to Cooper County Hospital. A doctor there determined that Mr. Knipp had a neurosurgical emergency and transferred him to Boone County Hospital, where he was admitted on April 29, 1994. Medical records prepared by Dr. Richard Boyer and Mr. Knipp's attending physician, Dr. Q. Michael Ditmore, indicate that, after a CT, scan Mr. Knipp was diagnosed as having bleeding between two of the membranes covering the brain. Their records stated Mr. Knipp had a "subarachnoid hemorrhage and closed head injury with an intraventricular component." The records showed it was the doctors' opinion that a burst blood vessel in the brain caused this hemorrhage, stating, "It is most likely that he had the hemorrhage first which resulted in the fall, rather than the subarachnoid hemorrhage as a result of a fall. The most likely etiology of this is an aneurysm." A report prepared by Dr. Barbara Tellerman, a radiologist, also indicated that the CT scan revealed indications of a ruptured aneurysm. Bleeding and swelling made it difficult to visualize many of the blood vessels, however, and the doctors were not able to identify an aneurysm site.

Dr. Ditmore performed surgery to place a right frontal Camino bolt ventriculostomy tube. Dr. Ditmore's records from April 30, 1994, indicate that he continued to believe Mr. Knipp "had a subarachnoid hemorrhage, probably from an aneurysm with resultant seizure and fall." On May 4, 1994, Dr. Boyer also reaffirmed his belief that "this subarachnoid hemorrhage is a result of the aneurysm which has been unable to be identified this far." Mr. Knipp's condition deteriorated and he died on May 5, 1994. The death certificate attributed Mr. Knipp's death to natural causes.

On February 14, 1995, Mr. Knipp's wife, Greer Knipp, filed a Claim for Compensation with the Division of Workers' Compensation on behalf of herself and the couple's two sons. Mrs. Knipp alleged that Mr. Knipp's death resulted from striking his head on the concrete floor when he fell off the forklift. A hearing was held on December 18, 1996, at which only Mrs. Knipp and Mr. Sapp testified. Mr. Knipp's medical records were admitted into evidence as exhibits.

On January 27, 1997, the Administrative Law Judge (ALJ) issued Findings of Fact and Rulings of Law. The ALJ found that Mr. Knipp's accident arose out of and in the course of his employment, but that the accident did not cause or contribute to cause his death. Specifically, the ALJ found that Mrs. Knipp had not satisfied her burden of proof because there was no scientific or medical evidence that Mr. Knipp's death resulted from striking his head on the floor. Such medical evidence was required because causation was not within common knowledge or experience. Therefore, the ALJ denied death benefits. On review, the Labor and Industrial Relations Commission (the Commission) found that the ALJ's award was supported by competent and substantial evidence. Mrs. Knipp appeals.

## II. STANDARD OF REVIEW

■ On review of a workers' compensation case, we can reverse, remand, or modify only if the Labor and Industrial Relations Commission acted in excess of its powers, the award was procured by fraud, the facts found by the Commission do not support the award, or there was not sufficient competent evidence to support the award. § 287.495.1, RSMo 1994; *Abel v. Mike Russell's Standard Serv.*, 924 S.W.2d 502, 503 (Mo. banc 1996). We must review the entire record, including all legitimate inferences drawn therefrom, in the light most favorable to the Commission's findings. *Wright v. Sports Associated, Inc.*, 887 S.W.2d 596, 598 (Mo. banc 1994). On issues involving witness credibility and the weight to be given to testimony, we defer to the Commission. *Johnson v. Denton Constr. Co.*, 911 S.W.2d 286, 288 (Mo. banc 1995). We are bound by the Commission's findings of fact. *Abel*, 924 S.W.2d at 503. When the facts are not in dispute, the question of whether an accident arises out of and in the course of employment is a question of law requiring *de novo* review. *Cox v. Tyson Foods, Inc.*, 920 S.W.2d 534, 535 (Mo. banc 1996).

## III. LEGAL ANALYSIS

■ In Mrs. Knipp's two points on appeal, she claims that the Commission erred in denying workers' compensation benefits for her husband's death. She argues that the medical records admitted as exhibits were sufficient to show the cause of Mr. Knipp's death was causally connected to his workplace accident because causation was within common knowledge or experience and did not require expert testimony.

■ For an employee's injury to be compensable under the workers' compensation statute, the injury must be due to an accident arising out of and in the course of employment. § 287.120.1, RSMo 1994. In the usual case, this requires the Commission to determine two facts: first, whether the accident occurred in the course of employment, and second, if so, whether it also arose out of the employment. These are two separate questions, both of which must be answered affirmatively before an employee is entitled to compensation. *Abel*, 924 S.W.2d at 503; *Automobile Club Inter-Insurance Exchange v. Bevel*, 663 S.W.2d 242, 245 (Mo. banc 1984).

As discussed below, the record clearly supported the Commission's determination below that Mr. Knipp did in fact suffer an

accident, in the form of a fall from the forklift, which occurred during the course of his employment and which arose out of his employment. Mrs. Knipp is not simply requesting compensation for the fall, however. She is requesting compensation for Mr. Knipp's death, a death which she alleges resulted from the fall. The Commission denied compensation because it determined that the accident did not cause his death. On appeal, Mrs. Knipp strongly disagrees with the latter determination. For the reasons discussed below, we agree with the Commission.

■ An injury arises out of an accident which occurs in the course of employment if the accident "occurs within the period of employment at a place where the employee reasonably may be fulfilling the duties of employment." *Abel*, 924 S.W.2d at 503, *quoting, Shinn v. General Binding Corp.*, 789 S.W.2d 230, 232 (Mo.App.1990). Here, Mr. Knipp was inside Nordyne's plant during work hours using a forklift to move coils. The Commission's finding that Mr. Knipp's accident occurred in the course of his employment is clearly supported in the record.

■ The record also unequivocally supports the Commission's determination that the accident itself arose out of employment. An accident arises out of employment when there is a causal connection between the conditions under which the work is performed and the accident. *Abel*, 924 S.W.2d at 503; *Alexander*, 851 S.W.2d at 527–28; *Kloppenburg v. Queen Size Shoes, Inc.*, 704 S.W.2d 234, 236 (Mo. banc 1986); *Dehoney v. B–W Brake Co.*, 271 S.W.2d 565, 566 (Mo. 1954). Here, so far as the record shows, the precipitating cause of the fall was idiopathic. However, the conditions of employment nevertheless contributed to the accident, for at the time of his idiopathic fall, Mr. Knipp was sitting on a forklift truck three feet off the ground, and so fell from a higher point than he would otherwise have fallen. Moreover, his feet became stuck in the forklift seat. We, thus, have no trouble in affirming the Commission's finding that the conditions of employment contributed to the accident. As the Supreme Court noted in *Alexander,* "[A] causal connection is established if the conditions of the workplace contributed to cause

the accident, even if the precipitating cause was idiopathic." 851 S.W.2d at 528.

More must be shown in order to recover than that one had an idiopathic condition and that one fell, however. One must also show that it was the effects of the work-related fall, rather than of the original idiopathic condition, which caused the injuries for which compensation was requested. This was made clear by the Supreme Court in *Alexander*. Mr. Alexander became dizzy at work and fell while standing on a platform 4 to 4½ feet off the ground performing his job. The fall caused injuries for which he sought compensation. The Court rejected the employer's claim that the injury did not arise out of employment simply because the fall itself resulted from an idiopathic dizziness rather than from something caused by the conditions of employment. It held that, even if the employer was not responsible for the original fall, the height at which Mr. Alexander was working contributed to the accident or exacerbated the injuries resulting from the accident. It held that a sufficient causal connection had been established between the conditions of the workplace and the accident and injury. *Alexander* cautioned, however, that its holding did not mean that any idiopathic injury was compensable just because it occurred at work, stating:

> We emphasize, however, that an idiopathic injury or condition that precipitated an accident is not compensable, and without question, there is no recovery for a wholly idiopathic incident, such as a heart attack that is not brought on by the conditions of employment. But even though the heart attack itself, is not compensable, injuries sustained in a fall as a result of the heart attack would be compensable, assuming there is a causal connection between the fall and the workplace.

*Alexander*, 851 S.W.2d at 528–29. *Accord, McCormack v. Stewart Enter., Inc.*, 916 S.W.2d 219 (Mo.App.1995) (although cause of fall was idiopathic, injury was compensable because employee worked on compactor four feet above ground and fall contributed to injury).

Here, as in *Alexander* and *McCormack*, although the original cause of Mr. Knipp's

fall was idiopathic, he would not have fallen from a height of three feet if he had not been working on the forklift. Therefore, the fact that the original cause was idiopathic would not prevent recovery if there was some evidence that falling and hitting his head at least exacerbated Mr. Knipp's injury.

But, unlike in *Alexander* and *McCormack*, here there was no evidence that falling off of the forklift contributed to Mr. Knipp's head injury and death. The only evidence introduced at the hearing showed that the idiopathic cause of the fall was an aneurysm, that the aneurysm caused a hematoma, and that the hematoma caused the death. There was no evidence that the hematoma or death were contributed to by the fact that Mr. Knipp hit his head on the floor after his fall. In fact, no medical witnesses testified at the hearing at all. The only witnesses were Mrs. Knipp and Mr. Sapp. Neither saw the accident and neither is qualified to give a medical opinion.

It is true that Mr. Knipp's medical records were admitted on a stipulation. Those records showed that the doctors caring for Mr. Knipp after the accident found a hematoma. The records also showed that the doctors believed that the hematoma was caused by an aneurysm rather than by the fact that Mr. Knipp hit his head on the floor after his fall, however, despite the fact that the massive bleeding prevented the doctors from specifically locating the aneurysm.

Mrs. Knipp argues that, because the medical records did not definitively confirm the presence of an aneurysm, the hearing record would have supported a determination by the Commission that the hematoma and death were caused by the fall rather than by an aneurysm. She argues that it was not necessary for a medical expert to offer an expert opinion that the fall caused or contributed to the hematoma. In essence, she contends that when a person falls, hits his head, and dies of brain hemorrhaging, it is obvious that the fall caused or contributed to the hemorrhaging, and expert testimony to that effect is unnecessary.

■ Mrs. Knipp is correct that expert medical testimony is not necessary to establish the cause of an injury if causation is a matter within the understanding of lay persons. *Quilty v. Frank's Food Mart,* 890 S.W.2d 360, 364 (Mo.App.1994). If medical causation is not within common knowledge or experience, however, then:

> an injury may be of such a nature that expert opinion is essential to show that it was caused by the accident to which it is ascribed. When the condition presented is a sophisticated injury that requires surgical intervention or other highly scientific technique for diagnosis, and particularly where there is a serious question of pre-existing disability and its extent, the proof of causation is not within the realm of lay understanding nor—in the absence of expert opinion—is the finding of causation within the competency of the administrative tribunal.

*Silman v. William Montgomery & Assoc.,* 891 S.W.2d 173, 175–76 (Mo.App.1995) (citations omitted). *See also Brundige v. Boehringer Ingelheim,* 812 S.W.2d 200, 202 (Mo. App.1991).

■ Here, Mr. Knipp's injury was a sophisticated one which required scientific techniques for diagnosis, and eventually surgery. There was more than one possible cause of Mr. Knipp's head injury and subsequent death. Although it was possible that Mr. Knipp's fall could have complicated his injury, there was no evidence in the record that this happened. On the contrary, it was the doctors' opinions, as stated in the medical records, that the fall did not contribute to the injury. The medical records in this case all agree that Mr. Knipp's hemorrhaging was most likely caused by an aneurysm. In this situation, it was not within common understanding or knowledge to sort out whether Mr. Knipp's internal brain hemorrhaging was caused by an aneurysm or by the blow to the head when he fell. Therefore, expert medical evidence was required for Mrs. Knipp to prove a causal connection between Mr. Knipp's injury and the conditions of his employment. We do not know whether Mrs. Knipp failed to present such expert testimony because she was unable to obtain an expert who would testify that the fall, rather than an aneurysm, caused the hematoma, or

because of the cost of obtaining an expert, or for some other reason. Whatever the reason, such expert testimony was needed in order to establish the requisite causal connection between the workplace accident and Mr. Knipp's hemorrhaging and death. Because Mrs. Knipp failed to present such expert testimony, the Commission properly denied her claim.

The judgment of the Commission is affirmed.

HANNA and RIEDERER, JJ, concur.

**R.J.A., Petitioner–Appellant,**