Roger BOCK, Appellant,

v.

CITY OF COLUMBIA, Respondent.

No. WD 69674.

Missouri Court of Appeals,
Western District.

Dec. 30, 2008.

William P. Nacy and Samuel Edward Trapp, Jefferson City, MO, for appellant.

Richard Lee Montgomery, Jr., Columbia, MO, for respondent.

RONALD R. HOLLIGER, Presiding Judge.

Roger Bock (Bock) appeals the decision of the Labor and Industrial Relations

Commission (Commission) denying him permanent partial disability benefits because he presented no expert testimony as to the percentage of his disability attributable to the compensable injury. We reverse the decision and remand the case to the Commission because it acted in excess of its powers in requiring expert testimony where Bock's injury, the effect of subsequent impact to the injured area, and the combined effect of these incidents, are all within the realm of lay understanding.

### Factual and Procedural Background

Roger Bock injured his leg while working as a maintenance mechanic for the City of Columbia in July of 2005. He was holding a ladder for a coworker when a six to eight foot section of metal pipe fell to the floor, bounced, and struck him in the shin, scraping off a one and one-half to two inch area of skin and causing further abrasions.

He was seen and treated by a physician several times between August and November of 2005 and generally showed improvement at each visit. However, he reinjured the area of the wound at least twice during this time. A hospital report from September states that he bumped his right foreleg "exactly over the area of the previous wound" while getting out of the shower, causing a shallow abrasion. In addition, Bock's final hospital report from November states that he "dropped a box on his right foreleg again and sustained a small abrasion in the lateral periphery of the initial abrasion." Nevertheless, at that visit Bock "denie[d] any pain with weight-bearing or any discomfort whatsoever."

Bock's doctor returned him to work in September with the restriction that he not lift more than fifty pounds. However, the restriction was removed approximately a week later, when he was "released back to regular full duties." No other restriction was placed on his work duties as a result of this injury.

At his hearing before an administrative law judge (ALJ), Bock testified that the only problems his leg cause him now are muscle aches and soreness when the weather changes. He also noted that he has "problems with re-injuring it at that location." In fact, Bock stated that since his last hospital visit he has reinjured the area between six and twelve times.

Bock filed a claim for compensation with the Department of Labor and Industrial Relations in July of 2007. After a hearing, the ALJ made a determination of 7.5 percent permanent partial disability of the right lower extremity at the 155 week level and ordered Columbia to pay him accordingly. This award was based only on the ALJ's observations of the injured leg and Bock's testimony, as no expert opinion was given as to the extent of any disability. The Commission reversed, finding that Bock failed to prove the nature and extent of his permanent partial disability. Bock appeals. Columbia has moved for sanctions against Bock for filing a frivolous appeal.

### Standard and Scope of Review

▌ Section 287.495.1[1] sets forth the standard of review on appeal of a final award of the Commission:

> The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

1. All statutory references are to RSMo 2000, updated through the 2007 Cumulative Supplement.

(1) That the commission acted without or in excess of its powers;

(2) That the award was procured by fraud;

(3) That the facts found by the commission do not support the award;

(4) That there was not sufficient competent evidence in the record to warrant the making of the award.

"Whether the award is supported by competent and substantial evidence is judged by examining the evidence in the context of the whole record." *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003).

■ "This Court reviews decisions of the Commission which are clearly interpretations or applications of law for correctness without deference to the Commission's judgment." *Meadows v. Havens Erectors, Inc.*, 238 S.W.3d 210, 213 (Mo. App. W.D.2007) (internal quotations omitted). "Review of legal determinations is *de novo* . . . ." *Id.* (internal quotation omitted). When the Commission arrives at an erroneous legal conclusion, it acts in excess of its powers. *Horrell v. Chase Hotel*, 174 S.W.2d 881, 886 (Mo.App.1943). However, "[a]bsent fraud, the Commission's findings of fact are conclusive and binding on appeal." *ABB Power T & D Co. v. Kempker*, 236 S.W.3d 43, 48 (Mo.App. W.D.2007).

■ Bock asserts that the Commission, in its findings and conclusions, adopted the findings of the ALJ, and therefore our scope of review encompasses those findings. It is true that, where "the Commission's award attaches and incorporates the ALJ's award and decision, we consider the findings and conclusions of the Commission as including the ALJ's award." *Elliott v. Kansas City, Mo., Sch. Dist.*, 71 S.W.3d 652, 656 (Mo.App. W.D.2002) (overruled on other grounds by *Hampton*, 121 S.W.3d 220). However, cases in which the

Commission incorporated the ALJ's findings are cases where the Commission agreed with the ALJ and affirmed those findings. *See, e.g., id.* at 655; *Smith v. Richardson Bros. Roofing*, 32 S.W.3d 568, 571 (Mo.App. S.D.2000) (overruled on other grounds by *Hampton*, 121 S.W.3d 220); *Banks v. Springfield Park Care Ctr.*, 981 S.W.2d 161, 163 (Mo.App. S.D.1998).

■ Here, the Commission stated, "[t]he findings of fact and stipulations of the parties were recounted in the award of the administrative law judge; therefore, the pertinent facts will be merely summarized below." This does not constitute incorporation of the ALJ's findings and conclusions into the Commission's final award. In fact, it would be illogical for the Commission to do so in this instance because the Commission expressly reversed the ALJ's award. Because the ALJ's award was not incorporated into the final award, we review only the Commission's final award.

### Discussion

Bock's sole contention on appeal is that the Commission acted without or in excess of its powers in holding that expert testimony was needed to prove the extent of Bock's disability attributable to the work related injury. The Commission based its decision on four legal determinations: (1) "It is a well established fact that medical expert testimony is required in order to establish the percentage of disability, if any, attributable to the work injury," and Bock presented no such testimony, (2) "[I]t was incumbent on [Bock] to prove the nature and extent of permanent partial disability attributable to the work-related injury" as opposed to his multiple other injuries to his shin, and he presented no such evidence, (3) "[E]xpert opinion is necessary when the injury is beyond lay understanding," and "it is apparent that

[Bock's] injury is beyond lay understanding," and (4) The ALJ's own observations of Bock's leg, "some two years after the injury and without consideration of subsequent non-work-related injuries to the same area ... is purely speculative" and an insufficient basis for a finding as to the extent of the disability.

■ The claimant bears the burden to show that a disability resulted from an accident and the extent of that disability. *Goleman v. MCI Transporters,* 844 S.W.2d 463, 465 (Mo.App. W.D.1992) (overruled on other grounds by *Hampton,* 121 S.W.3d 220).

## I. Medical Expert Testimony Is Not Always Required to Establish Percentage of Disability

■■ "The determination of the specific amount or percentage of disability is a finding of fact within the special province of the Commission." *Banner Iron Works v. Mordis,* 663 S.W.2d 770, 773 (Mo.App. E.D.1983) (overruled on other grounds by *Hampton,* 121 S.W.3d 220). "When the Commission makes the determination of disability it is not strictly limited to the percentages of disability testified to by the medical experts." *Id.* Moreover, this court has held that "[t]he Commission is authorized to base its findings and award solely on the testimony of a claimant. His testimony alone, if believed, constitutes substantial evidence ... of the nature, cause, and extent of his disability." *Smith v. Terminal Transfer Co.,* 372 S.W.2d 659, 665 (Mo.App.1963) (citing *Powers v. Universal Atlas Cement Co.,* 261 S.W.2d 512, 519 (Mo.App.1953); *Tuller v. Ry. Express Agency, Inc.,* 241 Mo.App. 68, 235 S.W.2d 404, 406 (1950)).

However, a more recent case from the Eastern District, upon which Columbia relies, seemingly stands for the opposite proposition: " 'Failure to offer expert testimony regarding the percentage of disability derived from the compensable injury bars the claimant from recovering permanent partial disability benefits.' " *Moriarty v. Treasurer of the State of Missouri,* 141 S.W.3d 69, 73 (Mo.App. E.D.2004) (quoting *Miller v. Wefelmeyer,* 890 S.W.2d 372, 376 (Mo.App. E.D.1994) (overruled on other grounds by *Hampton,* 121 S.W.3d 220)). But upon close inspection of *Moriarty* and the cases cited therein, it is apparent that expert testimony is mandatory only where the Commission is seeking to discern the percentage of disability attributable to a particular workplace injury where there has been another injury that contributed to the disability.

In *Moriarty* itself, the claimant failed to present medical evidence dividing the percentage of disability attributable to each of his two compensable injuries. *Id.* at 73. In *Miller,* the claimant failed to meet his burden of showing the percentage disability attributable to a pre-existing eye injury where he was seeking compensation for a subsequent injury to the same eye. 890 S.W.2d at 376. In *Goleman,* we found that, "[w]hen a pre-existing disability is present, the claimant is required to prove the extent of the pre-existing disability so that such percentage can be evaluated against the disability percentage existing after the compensable injury." 844 S.W.2d at 465 (citing *Plaster v. Dayco Corp.,* 760 S.W.2d 911, 913 (Mo.App. S.D. 1988)). The claimant in that case had a pre-existing injury to his back and was seeking compensation for a subsequent back injury. *Id.* at 465. We held that, "[u]nder the circumstances, only expert medical testimony would be sufficient to satisfy this burden." *Id.* at 466.

Because the cases relied upon by the Commission, and now by Columbia, require medical expert testimony to show

the extent of a disability only where an additional disability complicates the issue, and other cases make clear that expert testimony is not always required, the Commission erred in finding that "[i]t is a well established fact that medical expert testimony is required in order to establish the percentage of disability, if any, attributable to the work injury."

## II. Medical Expert Testimony Is Required to Establish Percentage of Disability Attributable to Work Injury Where There Have Been Subsequent, Non Work–Related Injuries to the Same Area, But Only Where the Injuries or Their Combined Effect On the Disability Fall Outside the Realm of Lay Understanding

■ The cases already discussed held that a claimant fails to meet his burden as to the extent of the disability where there is a pre-existing or contemporaneous injury to the same body part, and no expert testimony is offered to separate the percentage attributable to each injury. Although Columbia has cited no case, and we have found none, in which the issue was to what extent a *subsequent* injury contributed to the extent of the compensable disability (as opposed to the extent a *pre-existing* injury contributed to the compensable disability), the principle is equally applicable here. It is the claimant's burden to establish the extent to which a subsequent injury, to the same body part as the compensable injury, contributed to the disability. Without doing so, the claimant can not establish the percentage of disability attributable to the compensable injury.

■ However, these decisions are premised upon the assumption that the matter is not within the realm of lay understanding. The interplay among an injury's level of intricacy, its effect on the claimant's disability, and the effect of additional injuries to the same area, was discussed in *Griggs v. A.B. Chance Co.*, 503 S.W.2d 697, 704–05 (Mo.App.1973), which involved multiple back injuries:

> The testimony of a claimant or other lay witness can constitute substantial evidence of the nature, cause and extent of the disability when the facts fall within the realm of lay understanding. An injury may be of such a nature however that expert opinion is essential to show that it was caused by the accident to which it is ascribed. Where the condition presented is an acute aggravation of a pre-existing degenerative back condition with nerve root irritation, or any other sophisticated injury, which requires surgical intervention or other highly scientific technique for diagnosis, and particularly where there is a serious question of pre-existing disability and its extent, the proof of causation is not within the realm of lay understanding. . . .

*Id.* at 704 (internal citations and quotation marks omitted). Whether expert testimony is needed therefore depends upon whether the injury or injuries are "sophisticated," meaning requiring surgery or "highly scientific technique for diagnosis." And an additional injury to the same area is simply more likely to place the matter outside the realm of lay understanding.

■ We do not think that a *per se* rule, requiring expert testimony in all cases where the question of the extent of the disability is complicated by a subsequent or pre-existing injury, is borne out in the cases. Where the compensable injury, all alleged exacerbating injuries, and the extent to which these injuries contribute to the claimant's disability all fall within the realm of lay understanding, then lay testimony, including that of the claimant himself, constitutes competent and substantial evidence of the percentage attributable to

the compensable injury. To hold otherwise would invade the province of the Commission on the issue of "specific amount or percentage of disability," *see Banner Iron Works,* 663 S.W.2d at 773, and require burdensome expert testimony even in the case of a very simple injury.

### III. Bock's Injury, All Subsequent Impact to His Injury, and Their Effect on the Disability, Are All Within Lay Understanding

Bock suggests that expert testimony is necessary in cases of multiple injuries to the same body part only where each injury meets the statutory definition of "accident." *See* § 287.020.2. However, we see no reason to draw a line on that basis. Even if each exacerbating event amounts to a statutory "accident" or "injury," the issue of percentage disability attributable to the compensable injury may fall within lay understanding. Because we reject a rule requiring expert testimony in all cases of re-injury to the same area, we are concerned only with whether Bock's injury, the multiple events that may have exacerbated it, and their respective effect on the percentage of his disability attributable to the original injury are within lay understanding.

The Commission found that Bock's injury is beyond lay understanding. Whether a particular matter is beyond lay understanding has been treated as a question of law. *See, e.g. Decker v. Square D Co.,* 974 S.W.2d 667, 669 (Mo.App. W.D.1998) ("In cases in which a worker seeks compensation for carpal tunnel syndrome, he or she must submit a medical expert...."); *Silman v. William Montgomery & Assoc.,* 891 S.W.2d 173, 176 (Mo.App. E.D.1995) (overruled on other grounds by *Hampton,* 121 S.W.3d 220) (holding expert testimony is essential to prove the cause of a herniated disc). Therefore, we give no deference

to the Commission's finding on this issue. *Meadows,* 238 S.W.3d at 213.

Examples of conditions that have been found to be outside the realm of lay understanding include carpal tunnel syndrome, *Decker,* 974 S.W.2d at 669; a brain aneurysm, *Knipp v. Nordyne, Inc.,* 969 S.W.2d 236, 240 (Mo.App. W.D.1998) (overruled on other grounds by *Hampton,* 121 S.W.3d 220); ventricular fibrillation, *Carter v. Jones Truck Lines, Inc.,* 943 S.W.2d 821, 826 (Mo.App. S.D.1997) (superseded by statute on other grounds as stated in *Kasl v. Bristol Care, Inc.,* 984 S.W.2d 852, 853 (Mo. banc 1999)); lead poisoning, *Matzker v. St. Joseph Minerals Corp.,* 740 S.W.2d 362, 363 (Mo.App. E.D.1987) (overruled on other grounds by *Hampton,* 121 S.W.3d 220); and appendicitis, *Rexroad v. Schultz Folding Box Co.,* 261 S.W.2d 493, 496 (Mo. App.1953).

On the other hand, a claimant's testimony alone was sufficient to establish causation between an accident and a herniated disc. *Eubanks v. Poindexter Mech. Plumbing & Heating,* 901 S.W.2d 246, 248 (Mo.App. S.D.1995). In *Nick v. International Shoe Co.,* expert testimony was not required to establish causation for a hernia. 200 S.W.2d 590, 593 (Mo.App.1947). In *Ford v. Bi–State Development Agency,* the claimant suffered injuries to his hip, back, and arm, with a possible herniated disc, in a slip-and-fall accident. 677 S.W.2d 899, 904 (Mo.App. E.D.1984) (overruled on other grounds by *Hampton,* 121 S.W.3d 220). The court held that an award was supported by competent, substantial evidence even though no medical evidence was properly before the Commission. *Id.* Moreover, it adopted the following comment:

In line with the general tendency of administrative law to recognize the expertise of specialized tribunals, compensation boards may rely to a considerable

extent on their own knowledge and experience in uncomplicated medical matters, and in such cases awards may be upheld without medical testimony or even in defiance of the only medical testimony.

*Id.* (quoting *Smith v. Terminal Transfer Co.*, 372 S.W.2d at 666). We note that nearly all of the cases discussing the adequacy of lay testimony deal exclusively with the issue of causation and not that of the extent of the disability. Nonetheless, they are instructive because the question of the percentage of disability attributable to a particular injury, as opposed to other injuries, is at least partly a question of causation.

■ The immediate diagnosis following Bock's injury was "[r]ight foreleg cellulitis and contusion wound with erosion." In lay terms, he was suffering from a bruised leg and inflammation. A week later, Bock's injury was "much smaller" with "a little bit of seepage but ... decreased redness, decreased swelling and no actual drainage." He walked with a mild limp and was using pain medication. One week later, the progress continued and the doctor reported that "[t]he wound is slowly closing" and that Bock walked "without a significant limp." This initial injury is not sophisticated, nor did it require surgery or technical, scientific diagnosis. It is therefore within lay understanding and its effect on the disability is within the expertise of the Commission.

■ The September 8 report indicates that Bock "bumped his right foreleg exactly over the area of the previous wound and sustained again a shallow abrasion." However, Bock was walking without a limp, the wound was not infected or draining and the "initial wound [had] nearly healed over." The November 3 report indicates that Bock dropped a box on the area of the wound and "sustained a small abrasion in

the lateral periphery of the initial abrasion." However, he had no "pain ... or any discomfort whatsoever," continued walking without a limp, had no swelling, drainage, or inflammation. These incidents are also within lay understanding, and their effect on the disability is within the Commission's expertise.

■ Lastly, six to twelve additional injuries or bumps to the wound are not reflected in medical records but were reported by Bock. He did not seek medical treatment for any of these incidents and testified that he has managed to treat these wounds himself. His sole complaints are muscle aches and soreness with weather changes and "problems with re-injuring it at that location." The subsequent events are therefore minor injuries which are within lay understanding and Commission expertise.

Because none of Bock's injuries or their combined impact fall outside the realm of lay understanding, and because the Commission is competent to determine the extent of the disability attributable to the impact of the fallen pipe, the Commission erred in concluding that Bock's failure to present expert medical testimony barred his claim for benefits.

## IV. An Award Is Not "Purely Speculative," Just Because It Is Based Only On the Claimant's Subjective Complaints and the ALJ's Observations

■ The Commission found that an award based on Bock's own complaints and the ALJ's observations, some two years after the initial injury, and without consideration of subsequent injuries, was "purely speculative" and therefore not a sufficient basis for a finding on percentage of disability. However, as discussed above, the claimant's testimony alone can constitute substantial evidence of the extent of the disability. *Smith*, 372 S.W.2d at 665. The

Commission's conclusion that a finding as to the percentage of disability in this case would be speculative is clearly based on its erroneous determination that expert testimony was essential to any award. Because expert testimony was not necessary here, and because we recognize the expertise of the Commission as to the extent of the injury, the Commission erred in concluding that any award was speculative.

## Conclusion

The Commission acted in excess of its powers in determining that Bock could not be awarded benefits for permanent partial disability without presenting medical expert testimony as to the extent of his disability or the percent attributable to the initial injury. We, therefore, reverse the award of the Commission and remand for further proceedings consistent with this opinion. Columbia's request for sanctions against Bock for filing a frivolous appeal is denied.

LISA WHITE HARDWICK, Judge, and JAMES E. WELSH, Judge, concur.