

# Missouri Court of Appeals

## Southern District

### Division Two

RONALD MALAM,                                )
                                             )
    Claimant-Appellant,              )
                                             )
v.                                           )    No. SD33620
                                             )
STATE OF MISSOURI, DEPARTMENT    )    **Filed: June 24, 2015**
OF CORRECTIONS,                              )
                                             )
    Employer-Respondent.             )

APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS COMMISSION

**AFFIRMED**

PER CURIAM.  On August 12, 2011, Ronald Malam ("Claimant"), a correctional officer employed by the Missouri Department of Corrections ("Employer"), was involved in an incident where he was "required to 'take down' an uncooperative inmate."  Although Claimant felt nothing unusual at the time, other than "an adrenaline rush," the incident started a chain of events that ultimately resulted in a significant amount of hospitalization and medical treatment for a "hypertensive crisis" suffered by Claimant.  The Labor and Industrial Relations Commission ("the Commission") ultimately found the largest portion of that medical treatment to be non-compensable under section 287.020 of the workers' compensation law.[1]

---

[1] All statutory references to section 287.020 are to RSMo Cum.Supp. 2010.  All other statutory references are to RSMo Cum.Supp. 2005.

Claimant raises two points on appeal. The first claims that the Commission erred in finding that Claimant failed to meet his burden of proving that his "accident was the prevailing factor under [section 287.020.3(1)] in causing [Claimant's] hypertensive crisis" because his medical expert's report "unambiguously" opined that it was. It further asserts that the Commission "only considered the medical opinions" and ignored evidence and its own findings regarding other circumstances surrounding the accident.

Claimant's second point asserts the Commission erred in finding that Claimant failed to prove that his work accident was the prevailing factor in causing his hypertensive crisis because "the Commission failed to first determine whether a compensable injury *of any kind* occurred, in that a compensable physical and emotional injury did result from the sudden and extreme stresses of the accident that in turn caused the need to treat the hypertensive crisis."

Finding no merit in either claim, we affirm the decision of the Commission.

### Governing Law and Applicable Principles of Review

We review the findings of the Commission, not those of the Administrative Law Judge ("ALJ"). *Clark v. FAG Bearings Corp.*, 134 S.W.3d 730, 734 (Mo. App. S.D. 2004). To determine whether Claimant suffered a compensable injury, the Commission was required to utilize the statutory scheme set forth in section 287.020. *Armstrong v. Tetra Park, Inc.*, 391 S.W.3d 466, 472 (Mo. App. S.D. 2012). In pertinent part, that statute provides:

> 2. The word "accident" as used in this chapter shall mean an unexpected traumatic event or unusual strain identifiable by time and place of occurrence and producing at the time objective symptoms of an injury caused by a specific event during a single work shift. *An injury is not compensable because work was a triggering or precipitating factor*.

2

3. (1) In this chapter the term "injury" is hereby defined to be an injury which has arisen out of and in the course of employment. *An injury by accident is compensable only if the accident was the prevailing factor in causing both the resulting medical condition and disability.* "The prevailing factor" is defined to be the *primary factor, in relation to any other factor, causing both the resulting medical condition and disability.*

   (2) An injury shall be deemed to arise out of and in the course of the employment only if:

   (a) It is reasonably apparent, upon consideration of all the circumstances, that *the accident is the prevailing factor in causing the injury*; and

   (b) It does not come from a hazard or risk unrelated to the employment to which workers would have been equally exposed outside of and unrelated to the employment in normal nonemployment life.

Section 287.020.2–3 (emphasis added).[2]

The determination of whether an accident is the "prevailing factor" causing a claimant's condition is an inherently factual one. *Maness v. City of De Soto*, 421 S.W.3d 532, 539 (Mo. App. E.D. 2014). Under our standard of review, we "must examine the whole record to determine if it contains sufficient competent and substantial evidence to support the award, i.e., whether the award is contrary to the overwhelming weight of the evidence." *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222-23 (Mo. banc 2003).

We do not review issues involving the credibility of witnesses and the weight to be given to their testimony; instead, we defer to the Commission's determination of all such issues. *Caldwell v. Delta Exp., Inc.*, 278 S.W.3d 251, 253 (Mo. App. S.D. 2009). The Commission, as the trier of fact, is free to believe all, part, or none of the evidence

---

[2] Neither party disputes that the requirements of section 287.020.3(2)(b) were satisfied in this case.

presented.  *Mihalevich Concrete Constr. v. Davidson*, 233 S.W.3d 747, 755 (Mo. App. W.D. 2007).

**The Evidence**

After Claimant's "take down" of the inmate, he and another officer were escorting the inmate to another location within the prison.  While doing so, Claimant began to notice that he was short of breath, and he "felt like his lungs were filling up."  Claimant went to get a drink of water, and he began to spit up blood.  A nurse noticed what was happening and called an ambulance.

Claimant was transported by ambulance to Texas County Memorial Hospital, where he lost consciousness.  Chest x-rays revealed the presence of a pulmonary edema. The impression of the treating physician, Dr. Thomas Stubbs, was that Claimant had "severe pulmonary contusions" and "possibly had aspirated."

Claimant was eventually intubated and transported to Lester E. Cox Medical Center ("Cox") in Springfield, where he remained unconscious for approximately a week. During this period, Claimant was evaluated by several doctors.  Dr. Timothy Woods, a pulmonary specialist, noted an abrasion to Employee's left knee, but "no other external trauma [was] noted."  Dr. Woods found, "It does not appear that the patient's disease process is related to trauma.  It is likely that trauma precipitated the medical processes he has going on." Dr. Douglas Ham's impression was "significant congestive heart failure, pulmonary edema."  Dr. Ham further stated, "It is unclear whether this was all related to a possible cardiac contusion tipping him into the congestive heart failure or whether he could have also had a pulmonary contusion which worsened his respiratory and cardiac status or could have been secondary to the stress of the altercation."  According to Dr.

4

Mark Anderson, a cardiologist, Claimant was suffering from a "hypertensive crisis" with acute renal and respiratory failure and that he had hypotension and shock associated with the hypertensive crisis.[3]

Claimant ultimately recovered with no permanent disability, and he has since returned to work. He sought workers' compensation reimbursement from Employer in the amount of $138,010.15 for medical expenses billed by Cox.[4] An ALJ denied his claim. Claimant appealed that decision to the Commission, which unanimously affirmed the denial of benefits but modified the award. The Commission found that, although Claimant had suffered a work-related accident, he had failed to prove that the accident was the prevailing factor causing his injuries. *See* section 287.020.

### The Commission's Findings

The Commission, unlike the ALJ, concluded that Claimant had suffered an "accident" pursuant to section 287.020.2. More specifically, it stated:

> We conclude that the incident on August 12, 2011, was (1) unexpected, (2) traumatic, (3) identifiable by time and place of occurrence, and (4) produced at the time objective symptoms of an injury caused by a specific event during a single work shift-namely, employee's difficulty breathing and his spitting up blood. We conclude, therefore, that employee suffered an accident.

---

[3] Claimant quotes the Mayo Clinic's website for the definition of hypertensive crisis in his brief. According to that website:

> A hypertensive crisis is a severe increase in blood pressure that can lead to a stroke. Extremely high blood pressure — a top number (systolic pressure) of 180 millimeters of mercury (mm Hg) or higher or a bottom number (diastolic pressure) of 120 mm Hg or higher — damages blood vessels. They become inflamed and may leak fluid or blood. As a result, the heart may not be able to pump blood effectively.

MAYO CLINIC, http://www.mayoclinic.org/diseases-conditions/high-blood-pressure/expert-answers/hypertensive-crisis/faq-20058491 (last visited June 19, 2015). Upon admission to Cox, Claimant's blood pressure peaked at 252/140.

[4] At the time of Claimant's reimbursement request, Employer/insurer had already paid $6,085.46 in medical aid for Claimant, and Claimant had also received $2,284.95 in temporary disability benefits.

5

With regard to whether Claimant's accident was the prevailing factor causing Claimant's resulting medical condition, the Commission considered the written reports of two medical experts. One of these experts, Dr. Anne-Marie Puricelli, had conducted an independent medical examination of Claimant at Employer's request. In her conclusions, where she noted Claimant's preexisting hypertension and cardiomyopathy, Dr. Puricelli opined:

> It is my opinion that [Claimant] went into acute hypertensive crisis and developed hemoptysis due to the elevated pulmonary capillary pressure that occurred due to his left ventricular failure secondary to the hypertensive crisis. He did not admittedly sustain any trauma. There was minimal exertion that occurred surrounding the subduing of the inmate. He had not been adequately treated for his hypertension or his cardiomyopathy and he was drinking, admittedly, excessive amounts of fluid per day which, in my opinion, exacerbated both his hypertension and his underlying cardiomyopathy. It is my opinion that none of [Claimant]'s current diagnoses are related to any work event that occurred on August 12, 2011.

The Commission disagreed with Dr. Puricelli's conclusion, however, explaining:

> This is because Dr. Puricelli did not have the correct facts; she believed, for instance, that [Claimant] did not fall to the ground during the take down of the inmate. She also based her opinion, in part, on her determination that [Claimant]'s preexisting hypertension was inadequately treated before August 12, 2011, but we find no clear indication in the record that this was the case, and Dr. Puricelli does not explain how or why she believed [Claimant]'s hypertension to have been inadequately treated. [Claimant]'s unimpeached and credible testimony suggests (and we so find) that he was taking medications for hypertension and was regularly seeing a physician for checkups regarding his high blood pressure before August 12, 2011.

The Commission then noted that the only evidence offered by Claimant on this issue was the written report of Dr. Brent Koprivica, who had conducted an independent medical examination on behalf of Claimant. In his report, Dr. Koprivica detailed

6

Claimant's medical history and offered medical observations and opinions. As to causation, Dr. Koprivica opined:

1. [Claimant]'s described work-related incident with the takedown of the offender on August 12, 2011, is felt to represent the direct, proximate and prevailing factor *precipitating* his hypertensive crisis.

   I would like to point out that but for the work injury, it would be impossible to predict that [Claimant] would have developed the hypertensive crisis that has necessitated the care and treatment that followed that event.

2. Clearly, [Claimant] had an underlying hypertensive cardiomyopathy identified as far back as 2005. Nevertheless, the prevailing factor *precipitating* the specific event were the unexpected emotional and physical stresses associated with restraining the offender.

(Emphasis added). Noting the word "precipitating," as used in section 287.020.2, the Commission concluded, "While we believe an accident may be both a precipitating *and* the prevailing factor causing a compensable injury, this does not appear to be Dr. Koprivica's opinion in this case. Rather, Dr. Koprivica says the accident was the prevailing factor that *precipitated* [Claimant's] hypertensive crisis." The Commission continued: "Even if we were to credit this opinion from Dr. Koprivica, absent further explanation as to what Dr. Koprivica meant by choosing those specific words, we simply are unable to conclude that [Claimant] has proven the requisite degree of causation to satisfy the requirements of the statute." We find no error in this conclusion.

**Analysis**

Claimant's arguments to the contrary fail for several reasons. For one, Claimant ignores the fact that he had the burden of proving causation. "Medical causation, which is not within common knowledge or experience, *must* be established by scientific or medical evidence showing the relationship between the complained of condition and the

7

asserted cause." ***Gordon v. City of Ellisville***, 268 S.W.3d 454, 461 (Mo. App. E. D.

2008) (emphasis added). In such situations,

> an injury may be of such a nature that expert opinion is essential to show that it was caused by the accident to which it is ascribed. Where the condition presented is a sophisticated injury that requires surgical intervention or other highly scientific technique for diagnosis, and particularly where there is a serious question of pre-existing disability and its extent, the proof of causation is not within the realm of lay understanding nor—in the absence of expert opinion—is the finding of causation within the competency of the administrative tribunal.

***Silman v. William Montgomery & Assoc.***, 891 S.W.2d 173, 175-76 (Mo. App. E.D.

1995) (citations omitted), *overruled on other grounds by **Hampton***, 121 S.W.3d 220.

"Whether a particular matter is beyond lay understanding has been treated as a question

of law." ***Bock v. City of Columbia***, 274 S.W.3d 555, 562 (Mo.App. W.D. 2008).

Here, Claimant argues that the Commission "only considered the medical

opinions" and, as a result, "overlooked" or "ignored" other evidence. The problem with

this argument is that a "hypertensive crisis" is a sophisticated injury that could be caused

by various factors.[5] Further, Dr. Koprivica -- Claimant's own expert -- noted in his

---

[5] The Mayo Clinic's website (cited by Claimant) provides:

> A hypertensive crisis is a severe increase in blood pressure that can lead to a stroke. Extremely high blood pressure — a top number (systolic pressure) of 180 millimeters of mercury (mm Hg) or higher or a bottom number (diastolic pressure) of 120 mm Hg or higher — damages blood vessels. They become inflamed and may leak fluid or blood. As a result, the heart may not be able to pump blood effectively.
>
> Causes of a hypertensive emergency include:
> - Forgetting to take your blood pressure medication
> - Stroke
> - Heart attack
> - Heart failure
> - Kidney failure
> - Rupture of your body's main artery (aorta)
> - Interaction between medications
> - Convulsions during pregnancy (eclampsia)

review of Claimant's medical records that Claimant "has a very complex history."  As such, the evidence Claimant alleges the Commission ignored or overlooked — adequate treatment of preexisting conditions, no prior history of hypertensive crisis, and the circumstances surrounding the accident — is evidence that would be insufficient to establish that Claimant's hypertensive crisis was directly caused by his work-related accident instead of some other factor.[6]

In this regard, Dr. Koprivica's opinion, which purports to address causation, was necessary to meet Claimant's burden of proof on this issue.  However, as the Commission correctly observed, Dr. Koprivica's opinion was limited to a conclusory statement in his report that Claimant's accident was the "prevailing factor precipitating" his injury.  The Commission's inability to determine whether Dr. Koprivica was asserting that Claimant's work accident was "the prevailing factor" in causing his resulting treatment and disability (the statutory requirement for compensation) or that his work accident was merely the main "precipitating factor" of his injury went to the weight that the Commission afforded the opinion.  Although Dr. Koprivica's phraseology might have permitted an alternative interpretation, as Claimant strenuously suggests, this is not the standard by which we review the evidence in a workers' compensation appeal.  Rather, the weight afforded a medical expert's opinion is exclusively within the discretion of the Commission.  ***Sartor v. Medicap Pharmacy***, 181 S.W.3d 627, 630 (Mo. App. W.D. 2006).

Moreover, the Commission's written decision demonstrates that it found that Dr. Koprivica's conclusions, like those of Dr. Puricelli, stemmed from an incorrect

---

MAYO CLINIC, http://www.mayoclinic.org/diseases-conditions/high-blood-pressure/expert-answers/hypertensive-crisis/faq-20058491 (last visited June 19, 2015).
[6] For a list of cases in which medical conditions have been found to exceed lay understanding, see ***Bock***, 274 S.W.3d at 562.

9

understanding of the facts. Specifically, the Commission noted, and the record reflects, that although Dr. Koprivica's report suggested that Claimant had experienced "extreme exertion" in taking down the inmate, Claimant had consistently testified that the event required only "minimal exertion" on his part.[7] When expert testimony is thus impeached, the Commission is free to disregard it, even in the absence of other credible testimony. *See **Seifner v. Treasurer of State-Custodian of Second Injury Fund***, 362 S.W.3d 59, 67 (Mo. App. W.D. 2012) (finding that where claimant's unopposed expert testimony regarding medical causation had been impeached, the Commission was free to find in the other party's favor). For these reasons, Claimant's first point is denied.

Claimant's second point takes the position that he was not required to prove that his hypertensive crisis was a compensable injury, arguing that the Commission should have determined "whether a compensable injury *of any kind* occurred, in that a compensable physical and emotional injury did result from the sudden and extreme stresses of the accident that in turn caused the need to treat the hypertensive crisis." Relying on ***Tillotson v. St. Joseph Med. Ctr.***, 347 S.W.3d 511 (Mo. App. W.D. 2011),

---

[7] The transcript from the hearing reflects that Claimant testified as follows:

| [Employer's attorney:] | . . . Now you told me in your deposition that actually the exertion that you did taking him down you thought was minimal. Is that still your testimony today? |
|---|---|
| [Claimant:] | Yes. |
| [Employer's attorney:] | Okay. And do you recall seeing Dr. Koprivica, who your attorney sent you to see? |
| [Claimant:] | Yes. |
| [Employer's attorney:] | Okay. Now he says in his report, with respect to this incident, that you wrestled. I know he uses that term. I want to get it so I don't -- okay. Here's the quote from Dr. Koprivica's report. I want to make sure I read it correctly. It's on page 7 of Dr. Koprivica's first report. He says in this event, in wrestling the individual and taking him to the ground, there was extreme exertion. You don't agree with that. You told me it was minimal exertion, right? |
| [Claimant:] | Yes. |

10

Claimant asserts that he was only required to show that the treatment for his hypertensive crisis "flowed from" the circumstances surrounding his accident. *Tillotson* does not support such an argument.

Unlike the instant case, there was no dispute in *Tillotson* that the claimant had suffered a compensable injury. *See Tillotson*, 347 S.W.3d at 517. The dispute there was whether the "prevailing factor" requirement in section 287.020 applied to the determination of what type and extent of medical treatment a claimant with a compensable injury was entitled to receive. *Id.* at 517-18. The Western District of this Court found that the requirement did not apply to such a question; instead, once a compensable injury is established, the question becomes whether, pursuant to section 287.140, the treatment that followed was reasonably required to cure and relieve the effects of the injury. *Id.* at 518.

The flaw in Claimant's argument is that he incorrectly conflates his hypertensive crisis with its ensuing treatment and claims that both flowed from some earlier injury attributable to his work accident. A hypertensive crisis is not a medical treatment. It is a medical condition. And the "prevailing factor" requirement does apply when a medical condition or disability, i.e., an injury, is at issue. *Compare* section 287.020.3(1) *with* section 287.140.1; *Tillotson*, 347 S.W.3d at 518. As noted in *Tillotson*, there is a "material distinction between determining whether a compensable injury has occurred and determining the medical treatment required to be provided to treat a compensable injury." 347 S.W.3d at 517. *Tillotson* involved the latter situation; this appeal involves the former. *See Armstrong*, 391 S.W.3d at 472-73; *Jordan v. USF Holland Motor Freight, Inc.*, 383 S.W.3d 93, 95 n.4 (Mo. App. S.D. 2012).

11

To be entitled to compensation for the treatment that flowed from his hypertensive crisis, Claimant was required to first establish that his accident was the prevailing factor in causing his hypertensive crisis. As detailed in our analysis of Point I, the Commission did not err in finding that Claimant failed to do. Claimant's second point is also denied, and the decision of the Commission is affirmed.

DON E. BURRELL, J. - OPINION AUTHOR

MARY W. SHEFFIELD, P.J. - CONCURS

NANCY STEFFEN RAHMEYER, J. - DISSENTS



# Missouri Court of Appeals

### Southern District

### Division Two

RONALD MALAM,                                      )
                                                   )
     Claimant-Appellant,      )
                                                   )
v.                                                 )     No. SD33620
                                                   )
STATE OF MISSOURI, DEPARTMENT    )     **Filed: June 24, 2015**
OF CORRECTIONS,                                    )
                                                   )
     Employer-Respondent.      )

### APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS COMMISSION

### DISSENT

I must respectfully dissent. My problem with the majority opinion is that, although a crisis may be caused when a latent medical condition becomes symptomatic following an accident, it is undisputed that Claimant had absolutely no symptoms of any hypertensive crisis until he "took down" the prisoner. Then, while on the job, he started to experience shortness of breath and began spitting up blood. There was no time delay where he somehow recuperated; rather, he was transported by ambulance to Texas County Memorial Hospital, where he lost consciousness. Chest x-rays revealed the presence of a pulmonary edema. Claimant was eventually intubated and transported to Lester E. Cox Medical Center ("Cox") in Springfield, Missouri, where he remained unconscious for approximately a week. During this period Claimant was evaluated by several doctors. None of the doctors at the hospital provided evidence as to the

1

prevailing cause; however, Dr. Mark Anderson, a cardiologist, determined Claimant was suffering from a "[h]ypertensive crisis," acute renal failure, respiratory failure, and "[h]ypotension and shock following a hypertensive crisis."

Claimant had never been diagnosed with a "hypertensive crisis" before the August 11, 2012 incident, nor has he suffered one since. The take-down set in motion the chain of events that culminated in $138,010.15 for medical expenses billed by Cox; in other words, but for the take-down, Claimant would not have had that particular "hypertensive crisis." Did Claimant have a predisposition to having this type of injury as opposed to some other, certainly, but the fact is that his injury was an "accident" (which the Commission found) that caused the subsequent injury. As noted by the majority opinion, the Commission found that, although Claimant had suffered a work-related accident, he had failed to prove that the accident was the "prevailing factor" causing his injuries. I believe that is a misapplication of the law in parsing out Dr. Koprivica's words.

As the Commission found:

We conclude that the incident on August 12, 2011, was (1) unexpected, (2) traumatic, (3) identifiable by time and place of occurrence, and (4) produced at the time objective symptoms of an injury caused by a specific event during a single work shift--namely, employee's difficulty breathing and his spitting up blood. We conclude, therefore, that employee suffered an accident.

According to all doctors, Claimant had preexisting hypertension and cardiomyopathy. Even Employer's expert, Dr. Puricelli, opined:

It is my opinion that [Claimant] went into acute hypertensive crisis and developed hemoptysis due to the elevated pulmonary capillary pressure that occurred due to his left ventricular failure secondary to the hypertensive crisis.

2

At issue are the words of Dr. Koprivica:  "Clearly, [Claimant] had an underlying hypertensive cardiomyopathy identified as far back as 2005.  Nevertheless, the prevailing factor[s] precipitating the specific event were the unexpected emotional and physical stresses associated with restraining the offender."  The Commission challenged the meaning of "the prevailing factor precipitating" the hypertensive event.  Noting the word "precipitating," as used in section 287.020.2, [1] the Commission concluded, "[w]hile we believe an accident may be both a precipitating *and* the prevailing factor causing a compensable injury, this does not appear to be Dr. Koprivica's opinion in this case."  Where both a preexisting cardiovascular condition and a work-related activity contribute to cause an employee's injury, the question becomes which of the contributing factors was "the primary factor, in relation to [the] other factor, causing . . . the resulting" injury.  Section 287.020.3(1); ***Leake v. City of Fulton***, 316 S.W.3d 528, 532 (Mo. App. W.D. 2010).  In making this determination it is important to note that "[t]he words a medical expert uses when testifying are . . . important, not so much in and of themselves, but as a reflection of what impression such witness wishes to impart."  ***Mayfield v. Brown Shoe Co.***, 941 S.W.2d 31, 36 (Mo. App. S.D. 1997).

At no point in Dr. Koprivica's opinion does he state that Claimant's accident was *merely* a "precipitating factor" in relation to another "prevailing factor."  Rather, in evaluating the contributing factors at issue, Dr. Koprivica emphasized the role of Claimant's accident while minimizing the role of his preexisting conditions:  "Clearly, [Claimant] had an underlying hypertensive cardiomyopathy identified as far back as 2005.  *Nevertheless, the prevailing factor[s] precipitating the specific event were the unexpected emotional and physical stresses associated with restraining the offender.*"

---

[1] All references to statutes are to RSMo Cum.Supp. 2008, unless otherwise specified.

(emphasis added).  Given this context, Dr. Koprivica's use of "precipitating," rather than "causing," per the precise language of section 287.020.3(1), should not be singled out in a manner which defeats his overall impression.  I conclude that the Commission misapplied the law in finding that the words used did not comply with the statute.[2]

The Commission considered two expert opinions on the issue of medical causation and explicitly decided to not credit one of those opinions—that of Dr. Puricelli.  The Commission concluded that Dr. Koprivica's opinion did not conform to the requirements of section 287.020.  It defies reason and is a misapplication of the law to conclude that Claimant had an "accident" as defined by the statute and found by the Commission which caused Claimant to have difficulty breathing and spitting up blood, but that the immediate hypertensive crisis was not part and parcel of that accident.

Moreover "once it is determined that there has been a compensable accident, a claimant need only prove that the need for treatment and medication flow from the work injury."  *Tillotson v. St. Joseph Medical Center*, 347 S.W.3d 511, 519 (Mo. App. W.D. 2011).  An employer shall provide, among other things, "hospital treatment, . . . as may reasonably be required after the injury or disability, to cure and relieve from the effects of the injury."  Section 287.140.1, RSMo Cum.Supp. 2005.  I would reverse the decision of the Commission.

Nancy Steffen Rahmeyer, J. - Dissenting Opinion Author

---

[2] Where the record is silent as to whether the Commission disbelieved an expert medical witness, the Commission may not arbitrarily disregard the uncontradicted, unimpeached, and undisputed testimony of that witness.  *Bond v. Site Line Surveying*, 322 S.W.3d 165, 171 (Mo. App. W.D. 2010).