Robert SILMAN, Claimant/Employee,

v.

**WILLIAM MONTGOMERY & ASSOCIATES, Employer/Appellant,**

and

Liberty Mutual Insurance Company, Insurer/Appellant.

No. 66114.

Missouri Court of Appeals,
Eastern District,
Division Four.

Jan. 17, 1995.

Brian S. McChesney, Riethmann and Valentine, St. Louis, for appellants.

Robert J. Keefe, Randall, Keefe & Griffiths P.C., St. Louis, for employee.

KAROHL, Judge.

This is a worker's compensation case. William Montgomery and Associates [Montgomery], employer, appeals the Labor and Industrial Relations Commission's award of temporary and total disability compensation to Robert Silman, employee-claimant. We affirm.

Viewed in the light most favorable to the award, the evidence is as follows. Claimant is a boilermaker, who was 49 years old at the time of the hearing with one child living at home. Claimant sustained a work-related injury to his low back in 1980. In August 1980, Dr. Samuel Hunter performed surgery on claimant's back to relieve pain from the injury. Shortly thereafter, Dr. Hunter performed a second surgery on claimant's neck. Claimant testified that although he recovered from these surgeries well enough to return to work, he continued to have back pain for which he sought treatment from Dr. Andrew Painter, his family physician, during the years of 1983 to 1992. Dr. Painter prescribed the medications Darvocet and Robaxin. For approximately six months before the injury at issue in this case, claimant had back pain and took the prescribed drugs as needed but did not miss or turn down any work due to back pain.

Claimant testified that he worked out of a union hall. Potential employers would contact the union hall, which would then give the assignments to its members. Under this system, he probably worked for some fifty employers over the years 1983 to 1992. In June 1992, claimant was called for a job in Jefferson County for Montgomery, a contractor, at St. Joe Lead, to do some repair work on some tanks. It was estimated to be a five-day job, but claimant and his crew completed it in three.

Near the end of the third day, June 19, 1992, claimant and a co-worker were disassembling a catwalk. While they were lifting a 75– to 100–pound scaffold board, claimant had a sudden onset of pain and could not straighten up. His co-worker asked what was wrong and helped claimant down the ladder to the ground. The incident was promptly reported to Bob Davis, the supervisor on the job. Billy Knoll, the union steward, took claimant to the hospital, where he was given a shot and prescriptions and told to stay off of work for two or three days. The steward took employee back to the job site. A co-worker drove claimant home.

Claimant then made an appointment with Dr. Painter, who examined claimant and prescribed more Darvocet pills. On July 17, 1992, claimant was sent by Liberty Mutual Insurance Company, Montgomery's worker's compensation carrier, to Dr. Richard Covert, for an examination. Dr. Covert found that the range of motion in claimant's low back was limited. He diagnosed low back strain with muscle spasm. Dr. Covert arranged for claimant to have an MRI performed. The MRI revealed degenerative changes and mild disc bulge. While Dr. Covert noted that claimant's MRI was relatively unremarkable, he referred him to Dr. David Kennedy, a neurosurgeon, because of his continuing complaints. Dr. Kennedy recommended that

claimant undergo a set of trial epidural steroid injections, which he received on the following dates: August 27, September 8, and September 22, 1992. Two days after the last injection, Dr. Covert again examined claimant. Thereafter, Dr. Kennedy arranged for claimant to undergo a myelogram and post-myelogram CT scan, which revealed some degenerative changes, but no evidence of disc rupture. Subsequently, Dr. Kennedy decided surgery was not necessary and released claimant to return to work as of September 30, 1992.

On October 13, 1992, Montgomery and Liberty Mutual terminated claimant's temporary total disability benefits. The total amount of temporary total disability benefits paid claimant was $5051.95. Montgomery and Liberty Mutual did not volunteer or authorize any additional medical treatment. The total amount of medical aid provided to claimant by Montgomery and Liberty Mutual was $6621.27.

On October 16, 1992, Dr. Painter examined claimant. Claimant told the doctor he woke in the morning with low back pain that was relieved when he moved around. Dr. Painter's diagnosis was acute lumbar strain, for which he prescribed more Robaxin and Darvocet. Dr. Painter rendered the same diagnosis after a November 9, 1992, examination.

On November 17, 1992, Dr. Hunter examined claimant for the first time since 1983. Dr. Hunter's examination revealed involuntary muscle spasms, roto scoliosis, and a flacid right gluteus muscle. Dr. Hunter diagnosed a rupture of the L4 disc and recommended surgery. On January 15, 1993, Dr. Hunter removed a portion of the disc with a partial hemilaminectomy and diskectomy.

On October 5, 1993, the administrative law judge ruled claimant ruptured a lumbar disc on June 19, 1992, while lifting a heavy board. She ordered Liberty Mutual to pay medical and lost time benefits. On April 15, 1994, the Labor and Industrial Relations Commission affirmed and adopted the award. This appeal follows.

■ In its first point, Montgomery argues that the Commission erred in finding claimant sustained a ruptured disc and an exacerbation of his prior low back condition as a direct result of the June 19, 1992, accident. Montgomery observes the Commission's finding of causation rests solely on Dr. Hunter's answer to a hypothetical question. It argues the answer was deficient because it would be probative only if the doctor assumed a fact given in the question, but not proven—that is, that Dr. Hunter was asked to assume claimant received no treatment for low back problems during the year preceding the accident. Montgomery contends the evidence not only failed to prove that this assumed fact was true, but claimant's own testimony and the treatment records from Dr. Painter proved it was false.

■ The standard of review in a worker's compensation case is limited. We must review the entire record to determine whether the Commission's award is supported by competent and substantial evidence. *Willis v. Jewish Hospital,* 854 S.W.2d 82, 84 (Mo. App.E.D.1993). All evidence and inferences must be viewed in a light most favorable to the award. *Id.* An appellate court will not substitute its judgment of factual disputes for that of the Commission, even if this court would have made a different initial conclusion. *Id.* We review questions of law independently. *West v. Posten Construction Co.,* 804 S.W.2d 743, 744 (Mo. banc 1991).

■ Claimant bears the burden of proving an accident occurred and it resulted in injury. *Dolen v. Bandera's Cafe & Bar,* 800 S.W.2d 163, 164 (Mo.App.1990). For an injury to be compensable, the evidence must establish a causal connection between the accident and the injury. *Griggs v. A.B. Chance Co.,* 503 S.W.2d 697, 704 (Mo.App. 1973). The testimony of a claimant or other lay witness can constitute substantial evidence of the nature, cause, and extent of disability when the facts fall within the realm of lay understanding. *Id.* However, an injury may be of such a nature that expert opinion is essential to show that it was caused by the accident to which it is ascribed. *Id.* Where the condition presented is a sophisticated injury that requires surgical intervention or other highly scientific technique for diagnosis, and particularly where there is a serious question of pre-existing

disability and its extent, the proof of causation is not within the realm of lay understanding nor—in the absence of expert opinion—is the finding of causation within the competency of the administrative tribunal. *Id.* The subject of a herniated disc and its diagnosis, causation, and cure has been held to be "the realm of highly scientific techniques where expert opinion is essential." *Downs v. A.C.F. Industries, Inc.,* 460 S.W.2d 293, 296 (Mo.App.1970). Proper opinion testimony as to causal connection is competent and can constitute substantial evidence. *Pippin v. St. Joe Minerals Corp.,* 799 S.W.2d 898, 903 (Mo.App.1990).

Here, Dr. Hunter testified for claimant on the issue of causation. The pertinent portion of the testimony is as follows:

Q. Doctor, if you will assume an individual the same as the [claimant] who you have treated in the early 1980's and again in 1992 and '93, assume he is 50 years old, has about an 8th or 9th grade education and has worked as a boilermaker doing heavy labor more than 20 years. Assume that in approximately 1980, you performed an L–4 diskectomy on him here in Memphis and assume that approximately a year or so later you did a cervical procedure at C–5 where you did among other things a foraminotomy.

Assume that after his recovery from those two surgeries he went back to heavy work *and that he had had no treatment or lost time as a result of low back problems for a least a year prior to June of 1992* [our emphasis]. With that as a backdrop, assume that on June 19, 1992, while moving 50 or 100 pound scaffold boards he had some sudden low back pain which increased as time passed. . . .

Coupling those hypothetical facts, Doctor, with the findings that you have made, based upon a reasonable degree of medical certainty, do you have an opinion as to whether the condition of ill being which you have diagnosed was caused by the June 19, 1992, event which I described?

MR. BATEMAN: Doctor, let me pose an objection. I'm going to object to the question that it assumes facts on the basis that it does not accurately and fully describe

the findings of the MRI on August 12, 1992, or of the myelogram and following CT performed on September 28, 1992, and inaccurately states the finding of the Doctor on February 23, 1993.

A. Yes, sir, I have an opinion.

Q. And what is your opinion as to the causal connection between the events and the condition of ill being?

A. It is my opinion that the event of moving and lifting scaffolds, June 1992, ruptured his L–4 disc and exacerbated his back problem in an acute manner.

 Montgomery's objection did not encompass the point it now asserts on appeal—that is, that the hypothetical question required the doctor to assume claimant received no treatment for low back problems in the year preceding the June 1992 accident, an unproven and disproven fact. Furthermore, Montgomery cross-examined Dr. Hunter at considerable length. However, neither the failure to object nor the cross-examination of the expert eliminates the rule that a hypothetical question must be predicated on facts in evidence and must not assume facts not in evidence. *Pippin,* 799 S.W.2d at 904. A medical expert's opinion must be supported by facts and reasons proven by competent evidence that will give the opinion sufficient probative force to be substantial evidence. *Id.*

Here, Dr. Hunter's opinion may have been based on the assumption that claimant received no treatment as a result of preexisting low back problems for at least one year preceding June 1992. However, it is also possible the causation opinion is based on a disjunctive alternative to assuming absence of treatment. The question may be read to be a request for the doctor to assume (1) claimant went back to heavy work and (2) he had no treatment *or* lost time due to back complaint for the year before the date of injury. In that event, claimant met his burden to prove his claim because the opinion was based only on proven facts of resumption of heavy work and no lost time from work. This interpretation would satisfy the requirements recognized in *Pippin.* Moreover, that is a view of the evidence in a light most

favorable to the award. *Willis v. Jewish Hospital,* 854 S.W.2d at 84.

We conclude that in the absence of an objection that the hypothetical question was ambiguous, there was no error in the finding of the Commission that claimant met his burden to prove causation. The opinion of the expert was probative on the issue of causation where the hypothetical question, even if ambiguous, may be read to have required the witness to assume only proven facts. In the absence of an objection that the question was ambiguous, the claimant was denied an opportunity to amend it.

Because we find the award was supported by the evidence we also affirm the Commission's finding which rejected as moot employer's contention claimant violated § 287.128.1(4).

We affirm.

AHRENS, P.J., and SIMON, J., concur.