**Neil TURNER and Bobby "Shannon" Jones, Plaintiffs–Respondents,**

v.

**MISSOURI DEPARTMENT OF CONSERVATION, Defendant–Appellant.**

**No. SD 30817.**

Missouri Court of Appeals, Southern District, Division one.

Aug. 12, 2011.

Rehearing Denied Sept. 2, 2011.

Application for Transfer Denied Oct. 25, 2011.

---

1. All rule references are to Missouri Court Rules (2011).

438

Tracy E. McGinnis and Heidi Doerhoff Vollet, Jefferson City, MO, for Appellant.

Devin S. Kirby, Doniphan, MO, for Respondent Bobby "Shannon" Jones.

Daniel T. Moore, Poplar Bluff, MO, for Respondent Neil Turner.

DON E. BURRELL, Judge.

■ In response to a petition for declaratory judgment filed by Neil Turner ("Turner") and Bobby "Shannon" Jones ("Jones") (collectively, "Plaintiffs"), the trial court entered a judgment declaring certain wildlife regulations unconstitutionally vague and overbroad.[1] The Missouri De-

partment of Conservation ("the Department") timely appealed the judgment, claiming the trial court erred in declaring the regulations invalid because 1) "[P]laintiffs failed to show that the regulations were vague as applied to the facts of their case and because the regulations convey to a person of ordinary intelligence a sufficiently definite warning as to the proscribed conduct"; and 2) "the regulations do not implicate any first amendment interests."

Because the trial court misapplied the law in declaring the challenged regulations unconstitutionally void for vagueness based on purely hypothetical factual scenarios instead of Plaintiffs' actual conduct, and because Plaintiffs failed to allege that their free speech and association rights were violated as required to properly assert a claim that the regulations are unconstitutionally over-broad, we reverse the judgment of the trial court.

**Background**

The challenged regulations are a part of the Missouri Wildlife Code promulgated by the Department ("the Code") and identified as 3 C.S.R. 10–7.410(1)(A) (which prohibits hunting from or with a motor-driven conveyance); 3 C.S.R. 10–7.431(6)(C) (which prohibits deer hunting with a motor-driven land conveyance); and 3 C.S.R. 10–7.431(6)(D) (which prohibits deer hunting with the aid of dogs, a practice some-

---

1. Upon the Department's motion, we stayed the trial court's judgment pending our disposition of this appeal. Jones filed a brief, but Turner did not. A respondent is not required to file a brief, but without one, we must "adjudicate [his] claim of error without benefit of whatever argument [he] might have presented." *Jordan v. City of Centerville*, 119 S.W.3d 214, 217 n. 4 (Mo.App. S.D.2003). Jones's brief correctly notes various deficiencies in the Department's brief, including the addition of an "Introduction" section (*see* Rule 84.04(a)), *Hulsey v. Hawthorne Rest., Inc.*, 239 S.W.3d 156, 160 n. 2 (Mo.App. E.D. 2007), and *McGill v. Boeing Co.*, 235 S.W.3d 575, 577 (Mo.App. E.D.2007), and a statement of facts that is argumentative. Jones has not asked us to dismiss the Department's appeal based on these deficiencies and, as in *Hulsey*, while we do not condone them, they are not so egregious as to impede appellate review. 239 S.W.3d at 160 n. 2. All rule references are to Missouri Court Rules (2011).

times referred to as "deer dogging").[2] We have jurisdiction to hear the appeal because it challenges the constitutionality of state regulations, not statutes. *Adams Ford Belton, Inc. v. Missouri Motor Vehicle Comm'n,* 946 S.W.2d 199, 201 (Mo. banc 1997).

Plaintiffs' original petition, filed February 22, 2010, alleged that each of the above-cited regulations violated the due process provisions of both the United States and Missouri constitutions. Relying on Title 28, United States Code, section 1446(a),[3] the Department then removed the case to federal court. Plaintiffs responded by amending their petition to challenge the regulations as violating only their rights under the Missouri Constitution, and the case was remanded to state court.

Plaintiffs' amended petition (hereafter "the petition" or "Plaintiffs' petition") alleged that the Department "threatened application" of the regulations against both Jones and Turner, that Turner had actually been charged criminally in federal court for violating the regulations, and that they each reside in Ripley County, Missouri. Plaintiffs' petition made no other factual averments relevant to their claims.

Section 252.040 limits wildlife hunting to the extent permitted by "rules and regulations." Under section 252.020, "rules and regulations" mean those made by the Conservation Commission.[4] Title 3 C.S.R. 10–7.410 is entitled "Hunting Methods." Subsection (1)(A) of that regulation provides:

(1) Wildlife may be hunted and taken only in accordance with the following:

(A) Motor–Driven Air, Land, or Water Conveyances. No person shall pursue, take, attempt to take, drive, or molest wildlife from or with a motor-driven air, land, or water conveyance at any time. Except as provided in 3 C.S.R. 10–7.431, motor boats may be used if the motor has been completely shut off and its progress therefrom has ceased.

Title 3 C.S.R. 10–7.431 is entitled "Deer Hunting Seasons: General Provisions." Subsections (6)(C) and (D) of that regulation provide:

(6) Deer may not be hunted, pursued, taken or killed:

. . . .

(C) With the aid of a motor-driven land conveyance or aircraft.

(D) With the aid of dogs, in use or possession.

Plaintiffs' petition specifically alleged that the words contained in 3 C.S.R. 10–7.410(1) and 3 C.S.R. 10–7.431(6)(C)—prohibiting hunting and deer hunting, respectively, with or from motor-driven land conveyances—"are so unclear that people of 'ordinary intelligence' must guess at their meanings"; "by their literal terms, [they] criminalize the activity of the hunter using a motor-driven vehicle in any manner, shape or form during deer season" (such as a "white tail deer hunter conveying himself from his home to his hunting location with his truck"); they "are subject to

---

**2.** All references to regulations are to Mo.Code Regs. Ann. (2010).

**3.** All federal statutory references are to U.S.C.A. (2006).

**4.** The same initial authority for rules 3 C.S.R. 10–7.410 and 3 C.S.R. 10–7.431 is stated in an annotation following each rule as "AUTHORITY: sections 40 and 45 of Art. IV Mo.

Const. and section 252.240, RSMo 2000.* [Additional legislative history omitted.]" The asterisk note for each rule provides, " *Original authority: 252.240, RSMo 1972, amended 1984." References to section 252.240 as authority may be typographical errors as section 252.240 concerns endangered species and section 252.040 concerns the "[t]aking of wildlife."

the whimsical interpretations of individual conservation agents"; and they make it "impossible for a person of ordinary intelligence to know what he or she can lawfully do during deer season."

Plaintiffs also alleged that 3 C.S.R. 10–7.431(6)(D)—prohibiting hunting deer with dogs—is unclear because "[i]t is impossible for a person of 'common intelligence' to determine what constitutes hunting deer 'with the aid of dogs' or when or how dogs are 'in use' "; when read literally, it "makes the mere presence of a hunter who is 'pursing' [sic] a deer in an undefined geographic area unlawful if dogs (also in an undefined general geographical location) may be 'in use' or have been 'in use' "; and it is drafted in the plural such that it is permissible to hunt with only one dog, but the regulation "does not convey a sufficient warning" as to whether this means one dog per hunter or one dog per hunting party.

At the bench trial held on the petition in August 2010, the Department objected to the calling of any witnesses on the basis that the matter before the trial court was purely a question of law. The trial court overruled that objection and allowed Plaintiffs to present testimonial evidence.[5] Testimony specifically related to Turner was given by Special Investigation Field Supervisor Greg Hitchings, who testified that although he could not identify Turner, he was aware that Turner was charged as a result of a November 2008 investigative operation known as "Pulling Wool" ("Operation Pull Wool").

The only evidence presented by Turner about the substance of his charge was Exhibit 1, "a copy of the Federal indictment[.]" Exhibit 1 was not deposited with this court,[6] but both parties cite the Department's Appendix in reference to the charge—that Turner conspired to violate the Lacey Act by agreeing with another person "to knowingly transport, receive, and acquire, wildlife, namely white tail deer ("deer") when [the defendants] knew and in the exercise of due care should have known that the deer had been taken, possessed, and transported in violation of the laws and regulations of the United States" and 3 C.S.R. 10–7.410(1)(A) and 3 C.S.R. 10–7.431(6)(D).[7] In the information provided by the Department (and thereafter cited by Jones in his brief), Turner was alleged to have committed some of the

---

5. After the Department renewed its objection when Plaintiffs called their second witness, the trial court allowed the Department to have a continuing objection to the calling of any witnesses. The trial court also denied the Department's motion for a judgment on the pleadings, or in the alternative, for summary judgment.

6. We generally presume that exhibits not deposited would not be favorable to the appellant's position, see Shadow Lake of Noel, Inc. v. Supervisor of Liquor Control, 893 S.W.2d 835, 839 (Mo.App. S.D.1995), but Jones also states in his brief that Exhibit 1 was received into evidence at trial and cites to the document included in the Department's Appendix as support for that proposition. See In re Trust of Nitsche, 46 S.W.3d 682, 684 (Mo.App. S.D.2001) (a fact asserted in a party's brief and conceded in the other party's brief may be treated as if it appeared in the record).

7. For purposes of federal conspiracy, it is not required that the conspiracy succeed but that the agreement be made and some act implemented by one of the conspirators. United States v. Rehak, 589 F.3d 965, 971 (8th Cir. 2009) cert. denied, —— U.S. ——, 130 S.Ct. 2130, 176 L.Ed.2d 727 (U.S.2010). Title 3 C.S.R. 10–7.410(1)(A) specifically includes an "attempt to take" and an attempt may also violate 3 C.S.R. 10–7.431(6)(D) because the definition of "take" in the Code includes "attempting to take." 3 C.S.R. 10–20.805(53). Cf. State v. Davis, 51 S.W.3d 869, 872–73 (Mo.App. S.D.2001) (finding 3 C.S.R. 10–7.410(1)(D) may be violated by an attempt to use dogs to take deer).

"overt" acts of the conspiracy, namely to have "hunted deer with the aid of an all terrain vehicle" and "hunted deer with the aid of dogs" in the Mark Twain National Forest during November 2008.

Testimony specifically related to Jones came from conservation agent Darren Killian. He testified that he interviewed Jones in Doniphan, Missouri in connection with Operation Pull Wool. Killian believed that Jones had been "hunting with multiple dogs." Killian did not know if the dogs used by Jones were the dogs owned by him or dogs owned by other individuals. When asked about Jones's possession of dogs "in his aid during the 2008 Missouri Firearm Season", Killian replied that Jones was also being investigated for "[t]rying to locate and load dogs for other people." Killian confirmed that he was investigating the prohibition against deer hunting with dogs set forth in 3 C.S.R. 10–7.431(6)(D).

In all, Plaintiffs called five witnesses. Each witness was employed in some capacity with the Department and was asked questions about various hypothetical scenarios involving hunters, dogs, and motor vehicles.[8] The Department objected to the use of hypothetical questions. Those objections were overruled by the trial court, which granted the Department a continuing objection to the use of hypothetical questions.

Although the hypothetical questions to each witness were similar, they were not identical, and the answers sometimes differed. For example, the testimony about the "use" of dogs varied somewhat. Turner's counsel asked Killian, "If during the Firearm Deer Season if [sic] you havè a dog just with you out in the woods maybe staying right by you is that using a dog to aid you to hunt, to pursue, or kill deer?" Killian replied, "Certainly not." Killian also testified that circumstances and the hunter's statements could determine whether the dog was being used to hunt. When Turner's counsel asked conservation agent Chris Ely whether "having a dog laying at your feet while you are deer hunting would be a violation[,]" Ely responded, "While you are deer hunting if you had—if you possessed a dog, yes."

Plaintiffs also questioned the witnesses about their interpretations of the meaning of the word "dogs" as used in the regulations. The witnesses generally testified that "dogs" could also include a single dog, but one witness who did not personally participate in Operation Pull Wool, district supervisor Allen Daniels, testified, "If I read the regulation as dogs in the plural as it is written here yes, I would say yes, dogs would mean yes, more than one." About the use of motor-driven land conveyances in hunting deer, conservation agent Jason Langston conceded that "peo-

8. Plaintiffs' questioning of witnesses regarding the precise regulations alleged in their petition also varied. For instance, Turner's counsel specifically asked Hitchings about 3 C.S.R. 10–7.410 and in particular whether "those hunting methods rcfer to dogs in the plural?" A question specifically referring to 3 C.S.R. 10–7.431(6)(D)—a section that was challenged in Plaintiffs' petition regarding deer hunting with dogs—was not directed to Hitchings. Title 3 C.S.R. 10–7.410(1) regarding hunting methods includes subsections (D) and (E), which address permissible uses and training of dogs and prohibit deer hunting with dogs, but these subsections were not specifically challenged in Plaintiffs' amended petition. After referencing Section 7.410, Turner's counsel questioned Hitchings about "the regulation" and "those regulations" without specifying a particular section. Similarly, Jones's counsel referred to "the regulations" and did not specify the particular section at issue. Questions to other witnesses varied in their specificity in identifying the section(s) being addressed.

ple could interpret [3 C.S.R. 10–7.431] differently."

Neither Plaintiff testified. The Department called no witnesses and cross-examined no witnesses. On August 5, 2010, the trial court entered its judgment in favor of Plaintiffs, ruling that 3 C.S.R. 10–7.410(1)(A), 3 C.S.R. 10–7.431(6)(C), and 3 C.S.R. 10–7.431(6)(D) violated Article I, Section 10 of the Missouri Constitution, stating:

> the above described regulations and rules are vague, overly broad, indefinite and fail to establish sufficient standards so that people of ordinary intelligence must necessarily guess at their meaning. The court finds that the offending regulations are vague to the extent that those who must enforce the regulations are not afforded the explicit standards necessary to avoid arbitrary and discriminatory application.

The judgment further declared the regulations "*invalid and without effect*" and directed the Department to cease enforcing them.[9]

## Standard of Review

 "Properly promulgated agency rules and regulations have the same force and effect as statutes." *EBG Health Care III, Inc. v. Missouri Health Facilities Review Comm.*, 12 S.W.3d 354, 362 (Mo.App. W.D.2000). "The party challenging the validity of the statute has the burden of proving the statute unconstitutional." *State v. Richard*, 298 S.W.3d 529, 531 (Mo. banc 2009). In reviewing a declaratory judgment, we determine whether the trial court erroneously declared or applied the

law. *Psychiatric Healthcare Corp. of Missouri v. Department of Soc. Servs.*, 100 S.W.3d 891, 899 (Mo.App. W.D.2003). "Review of legal determinations is *de novo*, and issues involving the interpretation of statutory language are questions of law." *Id.* We apply the same *de novo* review to regulations as to statutes. *See Motor Control Specialities, Inc. v. Labor & Indus. Relations Comm'n*, 323 S.W.3d 843, 849 (Mo.App.W.D.2010); *Psychiatric Healthcare*, 100 S.W.3d at 903. As a result, we give no deference to the trial court's legal conclusions. *Motor Control Specialities*, 323 S.W.3d at 849.

## Analysis

### Due Process Claim

Plaintiffs' petition sought a declaratory judgment pursuant to section 536.050. Section 536.050.1 provides, *inter alia:*

> The power of the courts of this state to render declaratory judgments shall extend to declaratory judgments respecting the validity of rules, or of threatened applications thereof, and such suits may be maintained against agencies whether or not the plaintiff has first requested the agency to pass upon the question presented.

 While section 536.050 provides a method of obtaining a declaratory judgment as to the validity of agency rules and 536.053 potentially creates a large class of persons who may bring such a claim, *see Missouri Bankers Ass'n v. Director of the Missouri Div. of Credit Unions*, 126 S.W.3d 360, 365 (Mo. banc 2003) ("[T]he

9. Further insight into the trial court's decision appears in a docket entry that stated:

> Upon consideration of all evidence and arguments of the parties, the [trial] [c]ourt recognizes that hunting is an important right. In our area, hunting is not only for recreation, but it is a part of our way of life and any infringement of this right must be constitutional. Therefore, this [c]ourt finds all issues in favor of Plaintiffs. Formal Judgment executed and filed this date. Clerk to notify counsel. So ordered. [judge's initials]

legislature has expressed [by passing section 536.053] its intent to grant standing to challenge the validity of a rule to any person who is aggrieved to any extent[ ]"), neither statute grants such a plaintiff an ability to challenge the validity of a regulation based on something other than the factual circumstances of the litigant. In other words, neither statute expressly permits the issuance of purely advisory judgments concerning hypothetical situations or the re-litigation of controversies already decided. Indeed, while even the general law of declaratory judgments "is to be liberally construed and administered[,]" section 527.120 still requires:

(1) a justiciable controversy that presents a real, substantial, presently-existing controversy admitting of specific relief, as distinguished from an advisory decree upon a purely hypothetical situation; (2) a plaintiff with a legally protectable interest at stake, "consisting of a pecuniary or personal interest directly at issue and subject to immediate or prospective consequential relief;" (3) a controversy ripe for judicial determination; and (4) an inadequate remedy at law.

*Missouri Soybean Ass'n v. Missouri Clean Water Comm'n,* 102 S.W.3d 10, 25 (Mo. banc 2003) (finding that section 536.050 did not apply because the contested matter was not a rule, and general principles of declaratory judgments also supported dismissal of the action). Thus, it appears that 536.050 and 536.053 expand both "a legally protect[ed] interest" to include those who may be aggrieved and "a controversy ripe for judicial determination" to include one that has not otherwise been presented to the agency. But nothing in these statutes removes the general requirement that a real controversy—as distinguished from a hypothetical one—actually exists for the person challenging the regulation. Additionally, the particular relief sought by Plaintiffs—a declaration that the regulations are void for vagueness—must also be considered in the context of a real factual context.

▮▮▮▮▮ "[A] basic principle of due process [is] that an enactment is void for vagueness if its prohibitions are not clearly defined." *Cocktail Fortune, Inc. v. Supervisor of Liquor Control,* 994 S.W.2d 955, 957 (Mo. banc 1999). The void for vagueness doctrine addresses two potential problems.

One is the lack of notice given a potential offender because the statute is so unclear that "men of common intelligence must necessarily guess at its meaning." *Connally v. General Constr. Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926); *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); *Papachristou v. City of Jacksonville,* 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972); *State ex rel. Williams v. Marsh,* 626 S.W.2d 223 (Mo. banc 1982). The second is that the vagueness doctrine assures that guidance, through explicit standards, will be afforded to those who must apply the statute, avoiding possible arbitrary and discriminatory application.

*State v. Young,* 695 S.W.2d 882, 884 (Mo. banc 1985).

▮▮▮ "Generally, one is required to claim a statute is unconstitutional as to that person's own conduct." *State v. Ellis,* 853 S.W.2d 440, 446 (Mo.App. E.D.1993). Subsequent to its 2003 decision in *Missouri Bankers,* our high court has continued to direct that "[i]n reviewing vagueness challenges, the language is evaluated by applying it to the facts at hand." *Feldhaus v. State,* 311 S.W.3d 802, 806 (Mo. banc 2010). For instance, in *Conseco Fin.*

*Servicing Corp. v. Missouri Dep't of Revenue*, 195 S.W.3d 410, 415 (Mo. banc 2006), "the amorphous and open-ended nature of the definition of 'abandoned' " in a statute permitting a landowner to obtain title to an "abandoned" manufactured home rendered the statute "vulnerable to a vagueness challenge," but ultimately the challengers failed to demonstrate that they were actually confused or misled by the definition and therefore lacked standing to challenge it. *Cf. Richard*, 298 S.W.3d at 533 (the defendant had "no standing to raise hypothetical instances in which the statute [prohibiting possession of a loaded firearm while intoxicated] might be applied unconstitutionally" based on the state constitutional right to keep and bear arms).

 In addition, "neither absolute certainty nor impossible standards of specificity are required in determining whether terms are impermissibly vague." *Id.* at 957. If a permissible application of the law may be made, courts should make that application. *Id.*; *State v. Self*, 155 S.W.3d 756, 761 (Mo. banc 2005) ("No evidence was offered that [defendant] was unsure whether it would violate the [school attendance] statute to cause her daughter to miss 40 days of school, nor that other districts treated 40 absences in a different manner;" and thus there was "no evidence that the statute is unconstitutionally vague when applied to her situation").

 Notwithstanding the broad standing conferred by section 536.053, we believe this substantive principle also continues to apply to challenges to regulations such that "the hypothetical approach is not

the appropriate standard for reviewing whether a regulation is void for vagueness." *Cocktail Fortune*, 994 S.W.2d at 958. We further find that a facial challenge to the particular wildlife regulations at issue in this case is not appropriate. A plurality of the United States Supreme Court recognized a facial attack on a loitering ordinance in *City of Chicago v. Morales*, 527 U.S. 41, 55, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999), stating:

> It is a criminal law that contains no *mens rea* requirement, see *Colautti v. Franklin*, 439 U.S. 379, 395, 99 S.Ct. 675, 58 L.Ed.2d 596 (1979), and infringes on constitutionally protected rights, see *id.* at 391, 99 S.Ct. 675. When vagueness permeates the text of such a law, it is subject to facial attack.

 But, that does not mean that any penal statute or regulation is automatically subject to a facial challenge for vagueness. Our high court recently rejected a facial challenge to a child enticement statute in *State v. Faruqi*, 344 S.W.3d 193, 201 (Mo. banc 2011) ("Unlike in *Morales*, vagueness cannot be said to permeate the statute in question"). Likewise, *Morales* is distinguishable from this case because, absent an exception as permitted by section 562.026 and not shown here, "it is well-settled that, where a specific mental state is not prescribed in a statute, 'a culpable mental state is nonetheless required and is established if a person acts purposely or knowingly ...' " *Self*, 155 S.W.3d at 761–62 (quoting section 562.021.3; *State v. Bratina*, 73 S.W.3d 625, 628 (Mo. banc 2002)).[10] Thus, a violation of section 252.040 based

---

10. Section 562.026 provides:
A culpable mental state is not required:
(1) If the offense is an infraction and no culpable mental state is prescribed by the statute defining the offense; or
(2) If the offense is a felony or misdemeanor and no culpable mental state is prescribed by the statute defining the offense, and imputation of a culpable mental state to the offense is clearly inconsistent with the purpose of the statute defining the offense or may lead to an absurd or unjust result.

upon one of the wildlife regulations at issue here requires knowing conduct on the part of the offender. Further, even though they may require interpretation in different circumstances, the wildlife regulations challenged in this case are not "permeated with vagueness" because they use words commonly found in dictionaries and understood by those of ordinary intelligence. *Cf. State v. Stone*, 926 S.W.2d 895, 899 (Mo.App. W.D.1996) (section 252.040 and a regulation addressing cage strength used common terms and were not void for vagueness even though interpretation of the strength required "may vary from one breed of animal to another").

Plaintiffs cite *Young* as presenting "many of the same deficiencies as the regulations at issue in this case." There, section 578.050 RSMo 1978—which prohibited "being present at a cockfight"—was declared void for vagueness. 695 S.W.2d at 883. Its language prohibited being at a place used for cockfights. As a result, a person could be found in violation of the statute without actually being a spectator at a cockfight or even being aware that a cockfight was taking or had taken place. *Id.* at 885. Young was arrested at a scene suspected of hosting a previous cockfight and charged with being present at a cockfight, but "the extent of his participation in any cockfights and the character of his presence at the scene were not shown." *Id.* at 883. Because the statute "fail[ed] to provide a person of ordinary intelligence with adequate notice of the proscribed conduct," it was declared void. *Id.* at 886. The Court distinguished similar statutes that had been upheld in other jurisdictions on the basis that those statutes required some intent by the attendee. *Id.* at 884–85. We later opined that "[i]mplicitly, *Young* would not have found the cockfighting statute void had there been an intent element." *State v. Condict*, 65 S.W.3d 6, 17 (Mo.App. S.D.2001).

The trial court made no express findings as to vagueness when considered in the context of Plaintiffs' specific circumstances. And, although it may be that Plaintiffs might benefit in the future from the trial court's holding because the regulations would no longer apply to any of the hypothetical activities they had described and might intend to engage in in the future, the declaratory judgment here appears to resolve no specific, actual and immediate controversy involving Plaintiffs. As entered, the judgment effectively declares the regulations invalid on their face.

In the instant case, nothing indicates that Jones was ever charged with any violation of the challenged regulations. According to Killian, Jones was questioned in relation to the possible violation of 3 C.S.R. 10–7.431(6)(D) regarding possible "hunting with multiple dogs" and "[t]rying to locate and load dogs for other people." In his brief, Jones disputes any suggestion that he admitted knowing that he had violated the law or had "somehow confessed to a crime" during his interview with Killian.

 This, in itself, does not bar his claim as it is possible for a litigant to seek review of "pre-enforcement conduct" in some situations. Our high court, for example, "has held that pre-enforcement constitutional challenges to laws were ripe when the facts necessary to adjudicate the underlying claims were fully developed and the laws at issue were affecting the plaintiffs in a manner that gave rise to an immediate, concrete dispute." *Missouri Health Care Ass'n v. Attorney Gen. of the State of Missouri*, 953 S.W.2d 617, 621 (Mo. banc 1997). *See also Planned Parenthood of Kansas v. Nixon*, 220 S.W.3d 732, 737 (Mo. banc 2007) ("As to its First Amendment and vagueness claims, Planned Parenthood is directly and ad-

versely affected by section 188.250 because it cannot continue providing information and counseling to minors about abortion without risking liability under the statute"). *But see J.H. Fichman Co., Inc. v. City of Kansas City,* 800 S.W.2d 24, 27 (Mo.App. W.D.1990) (plaintiff's petition for declaratory judgment was providently dismissed because, among other reasons, the plaintiff could assert claims as "defenses in an underlying action for [m]unicipal [o]rdinance violation, should such action be commenced").

■ The limited, pre-enforcement conduct exception does not apply here because Jones failed to demonstrate that the facts concerning him were fully developed such that the law could be construed in context, *see Missouri Health,* 953 S.W.2d at 621. Nor does it appear that the Department somehow interrupted or prevented a particular course of conduct by Jones. *See Planned Parenthood,* 220 S.W.3d at 737.

Instead, Plaintiffs' petition asserts that 3 C.S.R. 10–7.410(1)(A) and 3 C.S.R. 10–7.431(6)(C) "criminalize the activity of the hunter using a motor-driven vehicle in any manner, shape or form during deer season" and Plaintiffs offer several innocent-sounding scenarios as illustrations and contend that 3 C.S.R. 10–7.431(6)(D) leaves ordinary persons unable to know whether a shot may be fired when a deer is "scared into the innocent hunter's line of sight for a kill" or whether perhaps each hunter could hunt with the assistance of only one dog.

■ These hypothetical scenarios do not demonstrate that the regulations were impermissibly vague as to the actual situations presented by each Plaintiff, and Plaintiffs cannot challenge the substance of the wildlife regulations at issue through the assertion of hypothetical scenarios. *State v. Brown,* 140 S.W.3d 51, 55 (Mo. banc 2004) ("it is inappropriate to project the challenge to factual situations not presented here in which the language used, as applied, might indeed be vague and confusing"); *State v. Entm't Ventures I, Inc.,* 44 S.W.3d 383, 387 (Mo. banc 2001) (vagueness challenge against nuisance law rejected because part of the challenged statute relating to the manufacture of liquor did not apply to the defendant whose cabaret was closed and there was no evidence that the law was arbitrarily or discriminatorily enforced against him); *see State v. Jones,* 892 S.W.2d 737, 739–40 & n. 1 (Mo.App. W.D.1994) (declining to reach the merits of a claim that a statute's uncertainty made it susceptible to arbitrary and discriminatory application because the defendant—who asserted this claimed uncertainty only in the context of a hypothetical situation—had no standing to make it and the trial court is without authority to declare judgment regarding hypothetical scenarios).

We refuse to speculate as to whether any of the hypothetical situations described by Jones are his actual situation and would thereby perhaps present a ripe controversy with the Department that could possibly satisfy the elements necessary for a successful declaratory judgment action. *Missouri Soybean Ass'n,* 102 S.W.3d at 25. Jones makes no specific claim that his due process rights were violated by a vague application of the challenged regulations when the Department investigated him for (and apparently did not charge him with) hunting deer with multiple dogs.

As for Turner, the most that has been alleged is that he was charged with violating at least two of the challenged regulations—3 C.S.R. 10–7.410(1)(A) and 3 C.S.R. 7.431(6)(D) in the context of a federal conspiracy. Giving Turner the benefit of as much alleged factual information as may be gleaned from the record and the briefs, the conspiracy was to violate the

Lacey Act by agreeing with another person "to knowingly transport, receive, and acquire, wildlife, namely white tail deer ("deer") when [the defendants] knew and in the exercise of due care should have known that the deer had been taken, possessed, and transported in violation of the laws and regulations of the United States" and 3 C.S.R. 10–7.410(1)(A) and 3 C.S.R. 10–7.431(6)(D). The information provided by the Department's appendix and cited by Jones in his brief indicates that Turner was alleged to have committed some of the "overt" acts of the conspiracy, namely to have "hunted deer with the aid of an all terrain vehicle" and "hunted deer with the aid of dogs" in the Mark Twain National Forest during November 2008. The information against Turner asserted that he had knowingly conspired to acquire deer when he knew that the deer had been taken illegally, and thus the record does not suggest that the regulations were applied against him without requiring knowledge on his part. *See Condict*, 65 S.W.3d at 17 (where a *scienter* requirement prevented a vagueness challenge to a statute prohibiting possession of precursor chemicals from being successful), and *Young*, 695 S.W.2d at 884–85 (because the statute did not require the defendant to know that a cockfight was taking place, it was found impermissibly vague).

While no evidence was presented that Turner was charged with a violation of 3 C.S.R. 10–7.431(6)(C), even if we treated Turner as also being investigated for a possible violation of it, Turner still did not state how application of the wildlife regulations to his charged or suspected conduct was a vague or arbitrary application. Turner did not submit to the trial court that any of the innocent-sounding scenarios suggested by Plaintiffs were in fact his scenario in the federal case, and the trial court did not find that the wildlife regulations were vague or arbitrary as applied to the facts of Turner's investigation or prosecution.

█ Additionally, Turner's ability to challenge at least 3 C.S.R. 10–7.410(1)(A) and 3 C.S.R. 10–7.431(6)(D) in his federal case gave him a sufficient alternate remedy so as to bar his attempt to challenge by declaratory judgment the validity of regulations used as the bases for criminal charges actually filed against him. *Cf. Schaefer v. Koster*, No. 342 S.W.3d 299, 299–01 (Mo. banc 2011) (holding a declaratory judgment action was properly dismissed where the plaintiff had the option of raising the unconstitutionality of the challenged DWI statute as a defense to the criminal charges brought against him on the basis of that statute); *Preferred Physicians Mut. Mgmt. Grp., Inc. v. Preferred Physicians Mut. Risk Retention Grp.*, 916 S.W.2d 821, 824 (Mo.App. W.D.1995) (holding a declaratory judgment should not have been entered because the plaintiff had an alternative remedy of asserting the issue as a defense to defendant's action). This is especially true because "Missouri's due process provision parallels its federal counterpart, and in the past [the Supreme Court of Missouri] has treated the state and federal due process clauses as equivalent." *Jamison v. State of Missouri, Dept. of Soc. Servs., Div. of Family Servs.*, 218 S.W.3d 399, 405 n. 7 (Mo. banc 2007).

Because Plaintiffs failed to prove that the way the regulations were applied against them violated their due process rights, that portion of the Department's point is granted.

### Overbreadth Claim

█ The trial court also found the challenged regulations to be unconstitutional because it believed them to be "overly broad." As the Department recognizes, overbreadth is a doctrine connected with

the First Amendment, not the due process clause, and requires a different analysis. For instance, it is easier to establish standing in an overbreadth challenge. As pointed out in *Young:*

> An exception exists where the accused has challenged the facial validity of the ordinance or statute on First Amendment grounds, in which case it is irrelevant that his particular conduct which subjected him to arrest, could constitutionally be prohibited under the statute. *Broadrick v. Oklahoma,* 413 U.S. 601, 611–12, 93 S.Ct. 2908, 2915–2916, 37 L.Ed.2d 830 (1973). *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *City of Kansas City v. Thorpe,* 499 S.W.2d 454 (Mo.1973), *cert. denied, Thorpe v. City of Kansas City,* 416 U.S. 990, 94 S.Ct. 2398, 40 L.Ed.2d 768 (1974); *State v. Swoboda,* 658 S.W.2d 24 (Mo. banc 1983). Overbreadth attacks are allowed where rights of association are ensnared in statutes which, by their broad sweep, might result in burdening innocent associations. *Broadrick,* 413 U.S. at 611–612, 93 S.Ct. at 2915–2916.

695 S.W.2d at 884.

■■■■■ But the overbreadth doctrine is still limited to the context of the First Amendment. *Richard,* 298 S.W.3d at 531.

Plaintiffs' petition alleged that, *inter alia,* the regulations are "unconstitutional" and "overly broad" but cited no specific constitutional offense except "due process of law in violation of Article I, [Section] 10 of the Missouri Constitution"—it made no reference to Missouri Constitution Art. I, sections 8 & 9, provisions guaranteeing freedom of speech and association. And while its related docket entry indicated that the trial court considered the right of hunting to be "important," and the judgment found the regulations "overly broad," it made no reference or finding concerning Plaintiffs' free speech or association rights. Even Plaintiffs' original petition—which then included a Fourteenth Amendment due process allegation—did not include any challenge based on the First Amendment or Mo. Const. Art. I, sec. 8 or 9.[11]

■■■■■ We will not address a constitutional issue not properly presented for decision in a declaratory judgment action. *See Readey v. St. Louis Cnty. Water Co.,* 352 S.W.2d 622, 628 (Mo. banc 1961) (where our high court declined to consider a First Amendment issue involving religion when the issue was not raised in a pleading or at trial). *Cf. Self,* 155 S.W.3d at 761 ("it is not this Court's prerogative to offer advisory opinions on hypothetical issues that

---

11. Plaintiffs' motion to remand the instant case from federal district court back to the trial court is not included in the legal file. The order of remand, however, states that "plaintiffs stated that their First Amended Petition ... no longer involves a federal question." (Character spacing corrected from legal file copy.) The order went on to state: "Plaintiffs contend that this court no longer has subject matter jurisdiction because the First Amended Petition does not present a claim founded on a right arising under the laws of the United States." (Character spacing corrected from legal file copy.)

Mo. Const., art. 1, sec. 8 provides

[t]hat no law shall be passed impairing the freedom of speech, no matter by what

means communicated: that every person shall be free to say, write or publish, or otherwise communicate whatever he will on any subject, being responsible for all abuses of that liberty; and that in all suits and prosecutions for libel or slander the truth thereof may be given in evidence; and in suits and prosecutions for libel the jury, under the direction of the court, shall determine the law and the facts.

Section 9 provides "[t]hat the people have the right peaceably to assemble for their common good, and to apply to those invested with the powers of government for redress of grievances by petition or remonstrance." Mo. Const., art. 1, sec. 9.

are not necessary to the resolution of the case before it"). This portion of the Department's point is also granted.

The trial court's judgment declaring the challenged regulations unconstitutional and ordering that they no longer be enforced is reversed.

BARNEY, P.J., and LYNCH, J., concur.